STEPHANIE IZZO *v.* MERIDEN-WALLINGFORD HOSPITAL ET AL.
(15263)

Peters, C. J., and Callahan, Borden, Berdon and Palmer, Js.

Argued February 15—officially released June 4, 1996

*John M. Letizia,* with whom, on the brief, was *Andrew A. Cohen,* for the appellants (named defendant et al.).

*Ernie R. Walker,* assistant attorney general, with whom, on the brief, were *Richard Blumenthal,* attorney general, and *William J. McCullough* and *Michael J. Belzer,* assistant attorneys general, for the appellee (defendant second injury fund).

BORDEN, J. The dispositive issue in this appeal is whether an employee's executed acknowledgment of a preexisting physical defect, in accordance with General Statutes (Rev. to 1983) § 31-325,[1] which was not

---

[1] General Statutes (Rev. to 1983) § 31-325 provides: "Acknowledgment by employees having physical defects. Whenever any person having a contract of employment, or desiring to enter into a contract of employment, has any physical defect which imposes upon his employer or prospective employer a further or unusual hazard, it shall be permissible for such person to execute in writing for himself or his dependents, or both, an acknowledgment of physical defect. *No such acknowledgment shall become effective unless the defect in question is plainly described therein, nor until one of the compensation commissioners finds that the person who signed such acknowledgment fully understood the meaning thereof and, if such person is a minor, that one of the parents or a guardian of such minor has approved the same in writing, nor until such commissioner, in writing, approves thereof, files the same in the district where the employer's business is located, and furnishes each of the parties thereto with a copy thereof.* No such acknowledgment shall be a bar to a claim by the person signing the same, or his dependents, for compensation for any injury arising out of and in the course of his employment, or death resulting therefrom, which injury shall not be found to be attributable in a material degree to the particular condition described therein. The rights and liabilities of the parties to such acknowledgment as to injuries arising out of and in the course of the employment and within the terms of such acknowledgment shall be such as are provided by section 31-349. 'Physical defect,' as used in this section, shall not be construed to include an occupational disease, susceptibility thereto or a recurrence thereof. Such acknowledgments shall remain in effect between the employee and the successor employer whenever an employer company which is a party to such an acknowledgment is merged

approved by the workers' compensation commissioner (commissioner) until after the occurrence of the employee's compensable injury, is effective to transfer liability from the employer to the second injury fund (fund).[2] Meriden-Wallingford Hospital and its insurer, Connecticut Hospital Association Workers' Compensation Trust (collectively referred to as the employer), appeal from the decision of the compensation review board (board) in favor of the fund, vacating the ruling of the commissioner.[3] The employer claims that the board improperly concluded that an acknowledgment must be approved by the commissioner prior to the occurrence of a compensable injury in order to effectuate a transfer of liability from the employer to the fund. The fund responds that § 31-325 provides that an acknowledgment is not effective until it is approved by

with, or substantially purchased by, another company, provided the employment relationship otherwise remains substantially the same." (Emphasis added.)

Section 31-325 was later amended to substitute the term "physical conditions" for "physical defects." See Public Acts 1991, No. 91-32, § 33. Unless otherwise indicated, statutory references are to those in effect at the date of the injury to determine the rights and obligations of the parties. See *Dos Santos* v. *F. D. Rich Construction, Inc.*, 233 Conn. 14, 16 n.1, 658 A.2d 83 (1995).

[2] Pursuant to General Statutes (Rev. to 1983) § 31-349, when an employee with a previous disability incurs a second disability from a second injury resulting in permanent disability caused by both the previous disability and the second injury, and the second disability is materially and substantially greater as a result of the previous disability, the employer is liable to the employee for workers' compensation benefits for the first 104 weeks. Thereafter, if the employer complies with the requirements of the statute, liability is transferred to the fund. See General Statutes (Rev. to 1983) § 31-349; J. Asselin, Connecticut Workers' Compensation Practice Manual (1988) pp. 67–68. If, however, the employer has obtained a valid acknowledgment, in accordance with § 31-325, the fund may be solely liable for all benefits to which the employee may be entitled. See General Statutes (Rev. to 1983) § 31-349; J. Asselin, supra, pp. 50–51 and 68.

[3] The claimant, Stephanie Izzo (claimant), was employed by Meriden-Wallingford Hospital at the time of her compensable injury. The employer and the fund were respondents in the underlying action before the commissioner.

the commissioner, and that it must be effective at the time of the compensable injury in order to transfer liability. We conclude that § 31-325 does not require preinjury approval by the commissioner of the claimant's executed acknowledgment in order to effectuate a transfer of liability from the employer to the fund. Accordingly, we reverse the decision of the board and reinstate the ruling of the commissioner.[4]

The following facts and procedural history are undisputed. In September, 1983, the claimant sought employment as a nurse at Meriden-Wallingford Hospital. Prior to her application, the claimant had sustained lower back injuries and had undergone spinal surgery. At the hospital's request, the claimant agreed to execute an acknowledgment of physical defect form in accordance with § 31-325. The acknowledgment, which described the claimant's preexisting spinal fusion and disc disease, was signed by Leo Willett, the claimant's treating physician, on September 20, 1983. Prior to signing the acknowledgment, the claimant met with her attorney to discuss the meaning and effect of the acknowledgment and to make sure that she understood the implications of signing it. Thereafter, the claimant signed the acknowledgment and delivered it to Jean Sterling, a hospital employee responsible for processing acknowledgments. The acknowledgment, however, was not submitted to the commissioner for approval at that time.

---

[4] The employer also claims that the board improperly concluded that the acknowledgment executed and approved while the claimant was employed at World War II Veterans Memorial Hospital (veterans hospital) was not valid to effectuate a transfer of liability from Veteran's Memorial Medical Center, an entity resulting from the merger between Meriden-Wallingford Hospital and the veterans hospital, to the fund under the successor employer liability provision of § 31-325. See footnote 1. We need not reach the successor employer liability issue, however, because we conclude that the acknowledgment executed by the claimant while she was employed at Meriden-Wallingford Hospital, and approved by the commissioner following the compensable injury, was valid to effectuate a transfer of liability to the fund.

The claimant began working at the hospital in November, 1983, but worked for only four hours before she was laid off. Several weeks thereafter she began employment at the veterans hospital, where she executed another acknowledgment, which was immediately approved by the commissioner for the third district.

In February, 1984, the claimant returned to her nursing position at Meriden-Wallingford Hospital. On January 17, 1986, she sustained a compensable injury to her lumbar spine. This injury was attributable in material degree to the claimant's preexisting back condition, which was adequately described in each of her previously executed acknowledgments. Her compensation claim was accepted by the employer, and a voluntary agreement was filed with and approved by the commissioner for the eighth district on November 24, 1986.[5] On November 28, 1990, approximately four years later, Meriden-Wallingford Hospital submitted the claimant's earlier executed acknowledgment to the commissioner for the eighth district for approval, at which time it was approved by one of the staff members.[6]

On November 12, 1992, after several formal hearings, the commissioner issued his initial finding and dismissal of the employer's claim to transfer its worker's compen-

---

[5] A voluntary agreement to pay compensation may be entered into by the parties pursuant to General Statutes (Rev. to 1983) § 31-296, which provides in relevant part: "Voluntary agreements. If an employer and an injured employee . . . reach an agreement in regard to compensation, such agreement shall be submitted in writing to the commissioner by the employer with a statement of the time, place and nature of the injury upon which it is based; and, if such commissioner finds such agreement to conform to the provision of this chapter in every regard, he shall so approve it. A copy of the agreement, with a statement of the commissioner's approval thereof, shall be delivered to each of the parties and thereafter it shall be as binding upon both parties as an award by the commissioner. . . ."

[6] The commissioner found that the approval on November 28, 1990, occurred after an informal hearing before the commissioner on October 31, 1990.

sation liability to the fund. On December 1, 1992, however, after the employer had filed several motions relating to the commissioner's finding and dismissal of its transfer claim,[7] the commissioner, sua sponte, reissued his opinion as a revised finding and award in favor of the employer. Thereafter, the employer again moved to correct the findings, which motion was granted on December 12, 1992. Thus, the commissioner's final ruling consists of his sua sponte ruling of December 1, transferring the employee's claim, as modified by his order of December 12.

The commissioner found that, although Meriden-Wallingford Hospital had failed to have the claimant's acknowledgment approved by the commissioner when the claimant signed the acknowledgment in 1983, it was, nevertheless, valid to effectuate a transfer of liability to the fund pursuant to § 31-325 because the acknowledgment had been approved prior to the transfer. The commissioner further found that the acknowledgment, executed and approved during the claimant's employment with the veterans hospital, was valid, under the successor employer provision in § 31-325, to effectuate a transfer of liability to the fund.

The fund then petitioned the board to review the finding and award of the commissioner. The board sustained the fund's appeal, reasoning that, because workers' compensation liability is part of the employment contract, any alteration of the contract under § 31-325, namely, through an effective acknowledgment, must occur prior to the compensable injury. The board, therefore, concluded that, as of the date of the claimant's injury, the employment contract did not include the rights and liabilities set forth in § 31-325. The employer

---

[7] The employer had filed a motion to correct the finding, a motion for articulation and additional ruling, and a petition to review the commissioner's decision.

appealed from the decision of the board to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c). We reverse the judgment of the board and reinstate the decision of the commissioner with regard to the Meriden-Wallingford Hospital acknowledgment.

The employer claims that the board improperly concluded that the Meriden-Wallingford Hospital acknowledgment was not valid to effectuate a transfer of liability from the employer to the fund. Specifically, the employer argues that: (1) approval by the commissioner is not required by § 31-325 because it is a directory provision, which, as a result of statutory changes in 1967, no longer affects the claimant's substantive rights;[8] and (2) even if we were to interpret the approval provision of § 31-325 as a mandatory requirement that must be satisfied before liability can be transferred from the employer to the fund, such approval need not occur

---

[8] In 1967, the legislature amended General Statutes (Rev. to 1966) § 31-325, and changed the effect of an employee waiver. See Public Acts 1967, No. 842, §§ 19 and 20. Prior to the amendment, an employee waiver operated to eliminate completely an employee's right to workers' compensation benefits from the employer if an otherwise compensable injury was attributable in material degree to a preexisting condition. Following the amendment, however, an employee waiver no longer affected an employee's right to compensation; rather, it operated to transfer liability from the employer to the fund. In 1979, in recognition of the fact that an employee form was no longer a waiver of an employee's rights, the legislature substituted the term "acknowledgment" for "waiver" throughout the statute. See Public Acts 1979, No. 79-376, § 79. The employer asserts that these changes support its contention that commissioner approval is a ministerial, directory provision, not required by § 31-325 in order to transfer liability to the fund because it does not affect an employee's substantive rights. Conversely, relying on the same legislative history, as well as the language of the statute, the fund contends that commissioner approval is a mandatory requirement because, regardless of the substantive changes, the operative language of the statute has remained essentially unchanged. Because we conclude that in the present case postinjury commissioner approval of the claimant's previously executed acknowledgment is valid under § 31-325, we need not reach the issue of whether the commissioner approval provision is mandatory or directory.

prior to the compensable injury. It need only occur before liability may be transferred. We agree that § 31-325 does not require preinjury approval of the claimant's executed acknowledgment and, therefore, that in the present case, the approved acknowledgment served to effectuate a transfer of liability from the employer to the fund.

The question of whether a commissioner's approval of an executed acknowledgment that occurs after the compensable injury may serve to effectuate a transfer of liability from an employer to the fund under § 31-325 presents an issue of statutory interpretation and, therefore, is a question of law regarding which our review is plenary. *State* v. *Burns*, 236 Conn. 18, 22, 670 A.2d 851 (1996). "[I]t is axiomatic that the process of statutory interpretation involves a reasoned search for the intention of the legislature. *In re Valerie D.*, 223 Conn. 492, 512, 613 A.2d 748 (1992); *Lauer* v. *Zoning Commission*, 220 Conn. 455, 459–60, 600 A.2d 310 (1991). In seeking to discern that intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter. . . . *Ambroise* v. *William Raveis Real Estate, Inc.*, [226 Conn. 757, 764, 628 A.2d 1303 (1993)]; see *Glastonbury Volunteer Ambulance Assn., Inc.* v. *Freedom of Information Commission*, 227 Conn. 848, 852–57, 633 A.2d 305 (1993). . . . *State* v. *Metz*, 230 Conn. 400, 409, 645 A.2d 965 (1994); *Fleming* v. *Garnett*, 231 Conn. 77, 91, 646 A.2d 1308 (1994)." (Internal quotation marks omitted.) *Frillici* v. *Westport*, 231 Conn. 418, 431–32, 650 A.2d 557 (1994).

We begin our analysis, therefore, with the language of General Statutes (Rev. to 1983) § 31-325, which provides in relevant part that "[n]o such acknowledgment

*shall become effective unless* the defect in question is plainly described therein, *nor until* one of the compensation commissioners finds that the person who signed such acknowledgment fully understood the meaning thereof . . . *nor until* such commissioner, in writing, approves thereof, files the same in the district where the employer's business is located, and furnishes each of the parties thereto with a copy thereof. . . ." (Emphasis added.) Thus, the statute contains only three requirements that must be met in order for an acknowledgment to become effective: (1) the physical defect must be plainly described therein; (2) the commissioner must find that the person who signed it fully understood its meaning; and (3) the commissioner must approve it in writing, file it and furnish copies to the parties.[9]

In the present case, it is undisputed that the acknowledgment executed by the claimant while employed by the Meriden-Wallingford Hospital plainly and adequately described the preexisting physical defect at issue. It is also undisputed that the commissioner determined that the claimant fully understood its meaning and, thereafter, approved the acknowledgment. Finally, it is undisputed that such approval occurred subsequent to the compensable injury. At issue then is whether the timing of that approval prohibits a transfer of liability. The employer argues that, in concluding that preinjury approval by the commissioner was necessary, the board improperly read a time limitation into § 31-325 that the statute does not contain. We agree.

Section 31-325 requires commissioner approval before the acknowledgment can become effective. "Effective" is defined as producing a desired effect. Webster's Third New International Dictionary. The

---

[9] Because, in the present case, it is undisputed that all three requirements have been met, and the only issue is when they must be met, we assume, without deciding, that the provisions in § 31-325 are mandatory. See footnote 8.

desired effect of § 31-325 is to allow an employer to transfer liability for workers' compensation to the fund if an employee suffers a compensable injury that is attributable in material degree to a preexisting defect. "The purpose of this type of statutory exception is to encourage conditional employment of those persons who are affected by or susceptible to a particular disease or injury to a degree which would ordinarily prevent them from securing a job." *Gagnon* v. *United Aircraft Corp.*, 159 Conn. 302, 304, 268 A.2d 660 (1970). "The purpose of filing [an acknowledgment] is to encourage employers to hire handicapped employees, or to retain [workers] who have suffered disabling job-related injuries. The [acknowledgment] has the effect of limiting the liability of an employer that hires or retains a handicapped employee and who subsequently suffers another disabling injury. The objective of the [acknowledgment] requirement is not to require registration of a handicapped employee, but to provide notice to an employer of any pre-existing disability of an employee and to document the nature and extent of such disability." *Vaughn* v. *United Nuclear Corp.*, 98 N.M. 481, 487, 650 P.2d 3 (App. 1982).[10] The "[a]cknowledgment does not change the worker's right to compensation if he is so reinjured; it merely shifts the liability for the payment of benefits from that employer to the [fund]." J. Asselin, Connecticut Workers' Compensation Practice Manual (1988) p. 50. We conclude that the term "effective" refers to the desired effect of transferring liability from the employer to the fund and, therefore, that an acknowledgment must be approved by a commissioner prior to effectuating such a transfer. There is nothing in the language of § 31-325, however, to suggest that the acknowledgment must be

---

[10] Although it is true that *Vaughn* involved different statutory language than that at issue in the present case, the objectives of the statutes are nevertheless comparable. See *Vaughn* v. *United Nuclear Corp.*, supra, 98 N.M. 486–87.

approved by a commissioner prior to the occurrence of the compensable injury.

The legislative history of § 31-325 does not illuminate the issue of whether commissioner approval is required prior to the compensable injury. Our interpretation of § 31-325, however, is consistent with the overall purpose of the statutes establishing the second injury fund.[11] "The legislature's remedial purpose in enacting [General Statutes] § 31-349 is well established. To prevent discrimination against handicapped workers, while providing the benefits of [workers'] compensation to such workers, virtually every state has enacted some form of second injury fund legislation. . . . Such legislation is also designed to relieve employers from the hardship of liability for those consequences of compensable injury not attributable to their employment. *Jacques* v. *H. O. Penn Machinery Co.*, [166 Conn. 352, 355–56, 349 A.2d 847 (1974)]. *Plesz* v. *United Technologies Corporation*, 174 Conn. 181, 185, 384 A.2d 363 (1978)." (Internal quotation marks omitted.) *Hernandez* v. *Gerber Group*, 222 Conn. 78, 82, 608 A.2d 87 (1992).

The fund's proffered interpretation of § 31-325, which would require approval of the acknowledgment prior to the occurrence of the injury, would frustrate this purpose because it would cause any burden resulting from a delay in commissioner approval to be borne by the employee who has voluntarily agreed to execute an

[11] General Statutes (Rev. to 1983) § 31-325 provides in part that "[t]he rights and liabilities of the parties to such acknowledgment as to injuries arising out of and in the course of the employment and within the terms of such acknowledgment shall be such as are provided by section 31-349. . . ."

General Statutes (Rev. to 1983) § 31-349 is our second injury fund statute, and provides in part that "[e]mployees shall not be denied any of the benefits provided by any provisions of this chapter by reason of the execution of an acknowledgment of physical defect, but the benefits specified in this chapter which would be payable except for the execution of such acknowledgment shall be paid entirely out of the second injury fund. . . ." See footnote 2.

acknowledgment of a preexisting defect. An employer would have an incentive to treat an employee with a preexisting defect differently from other employees, and prohibit that employee from beginning work until the acknowledgment has been approved, because failure to do so would necessarily result in a preclusion of the employer's ability to transfer liability to the fund under § 31-325 for any compensable injury that occurred prior to approval. Under the fund's interpretation of the statute, the employer could not transfer liability to the fund even if the commissioner ultimately determined that the employee had fully understood the meaning of the acknowledgment and the implications of signing it. Such an interpretation would elevate form over substance and undermine the legislature's objective in establishing the fund.

The fund further argues that preinjury approval is necessary to memorialize and legitimize the preexisting defect, and, thereby, to reduce the possibility of fraud. In the present case, however, because the Meriden-Wallingford Hospital acknowledgment contained an adequate description of the claimant's preexisting defect, was approved by a physician, and was signed by the claimant prior to the compensable injury, the defect was legitimized prior to the injury.[12] Additionally, we are not persuaded that commissioner approval has the objective that the fund hypothesizes. Commissioner approval is not an assurance of the validity of the underlying defect; the commissioner's role is primarily to ensure that the employee fully understands the implications of signing the acknowledgment.[13] Moreover, an

---

[12] We need not, therefore, decide whether the acknowledgment must describe the defect and be executed by the employee prior to the occurrence of the compensable injury in order to be valid to effectuate a transfer of liability to the fund.

[13] The implications to the employee of signing an acknowledgment are far less significant than they were prior to the 1967 amendment to General Statutes (Rev. to 1966) § 31-325. See footnote 8.

effective acknowledgment does not deprive the fund of its right to dispute the nature of the preexisting defect described in the acknowledgment and the extent to which it is causally related to the subsequent compensable injury. See General Statutes (Rev. to 1983) § 31-349.

The fund argues that our decision in *Gagnon* v. *United Aircraft Corp.*, supra, 159 Conn. 302, dictates that an acknowledgment cannot be effective until all the statutory requirements have been met and that an acknowledgment can have no effect on the transfer of liability for an injury occurring prior to the date of full compliance with § 31-325. We disagree.

In *Gagnon*, we concluded that the commissioner did not have jurisdiction to inquire into the validity of a waiver, executed pursuant to General Statutes (Rev. to 1966) § 31-325; see footnote 8; after it had been approved by the commissioner but prior to the initiation of a compensation claim. Id., 306. The fund cites the following language from our decision in *Gagnon*, in support of its claim that commissioner approval is required before an acknowledgment may be effective: "[T]he plaintiff . . . signed a waiver on September 25, 1967 . . . . The waiver was approved by the compensation commissioner two days later, *whereupon it became effective* under the terms of the statute." (Emphasis added.) Id., 303–304. "Because any attempted waiver of benefits under the compensation act must be carefully scrutinized, our statute requires the commissioner to find that the employee fully understood the meaning of his act before the waiver may be approved and become effective." Id., 305.

Even if we were to agree that *Gagnon* supports the proposition that a waiver or, presently, an acknowledgment, may not become effective until it is approved by the commissioner, such a conclusion would be consistent with our decision in the present case, namely, that an acknowledgment may be approved by the commis-

sioner subsequent to the compensable injury and still be valid to effectuate a transfer of liability to the fund. *Gagnon*, therefore, is inapposite to the issue in the present case.

The decision of the board is reversed and the case is remanded to the board with direction to reinstate the finding and award of the commissioner.

In this opinion the other justices concurred.