TOWN OF STRATFORD ET AL. *v.* STATE BOARD OF
MEDIATION AND ARBITRATION ET AL.
(15183)
(15346)
(15347)

Peters, C. J., and Borden, Norcott, Katz and Palmer, Js.

Argued April 25—officially released August 20, 1996

*Floyd J. Dugas,* with whom, on the brief, was *Richard J. Buturla,* for the appellants in Docket No. 15183, appellees in Docket Nos. 15346 and 15347 (plaintiffs).

*Thomas W. Meiklejohn,* for the appellant in Docket No. 15346, appellee in Docket No. 15183 (defendant United Automobile Workers Local 376).

*Maria C. Rodriguez,* assistant attorney general, with whom, on the brief, were *Richard Blumenthal,* attorney general, and *Charles A. Overend,* assistant attorney general, for the appellant in Docket No. 15347, appellee in Docket No. 15183 (named defendant).

*J. William Gagne, Jr.,* and *Jason W. Cohen* filed a brief for AFSCME, Council 4, AFL-CIO, as amicus curiae in Docket Nos. 15346 and 15347.

*Mary-Michelle U. Hirschoff* filed a brief for the Connecticut Conference of Municipalities as amicus curiae in Docket Nos. 15346 and 15347.

BORDEN, J. The dispositive issues in these three appeals involve: (1) the scope of the exemption from certain provisions of the Uniform Administrative Procedure Act (UAPA), for the state board of mediation and arbitration of the state labor department provided in General Statutes § 4-186 (c);[1] and (2) the meaning of the phrase "the legislative body of the municipal employer" as used in General Statutes § 7-473c (d) (5) of the Municipal Employees Relations Act (MERA).[2]

[1] General Statutes § 4-186 (c) provides: "The employment security division and the Board of Mediation and Arbitration of the state labor department, the claims commissioner, and the workers' compensation commissioner are exempt from the provisions of section 4-176e and sections 4-177 to 4-183, inclusive."

[2] General Statutes § 7-473c provides in relevant part: "Neutral arbitrator selection committee. Panel of neutral arbitrators. Mandatory binding arbitration; procedure; apportionment of costs. Rejection of award by legislative body of the municipal employer. Second arbitration format. (a) The labor commissioner shall appoint a neutral arbitrator selection committee consisting of ten members, five of whom shall represent the interests of employ-

## In Docket No. 15183 (administrative appeal), the plaintiffs, the town of Stratford (town) and the Strat-

ees and employee organizations and five of whom shall represent the interests of municipal employers, provided one of the members representing the interests of municipal employers shall be a representative of the Connecticut Conference of Municipalities. The members of the selection committee shall serve for a term of four years. Arbitrators may be removed for good cause. The selection committee shall appoint a panel of neutral arbitrators consisting of not less than twenty impartial persons representing the interests of the public in general to serve as provided in this section. Each member of the panel shall be a resident of the state and shall be selected by a unanimous vote of the selection committee. The members of the panel shall serve for a term of two years.

"(b) If neither the municipal employer nor the municipal employee organization has requested the arbitration services of the State Board of Mediation and Arbitration (1) within one hundred eighty days after the certification or recognition of a newly certified or recognized municipal employee organization required to commence negotiations pursuant to section 7-473a, or (2) within thirty days after the expiration of the current collective bargaining agreement, or within thirty days after the specified date for implementation of reopener provisions in an existing collective bargaining agreement, or within thirty days after the date the parties to an existing collective bargaining agreement commence negotiations to revise said agreement on any matter affecting wages, hours, and other conditions of employment, said board shall notify the municipal employer and municipal employee organization that one hundred eighty days have passed since the certification or recognition of the newly certified or recognized municipal employee organization, or that thirty days have passed since the specified date for implementation of reopener provisions in an existing agreement, or the date the parties commenced negotiations to revise an existing agreement on any matter affecting wages, hours and other conditions of employment or the expiration of such collective bargaining agreement and that binding and final arbitration is now imposed on them, provided written notification of such imposition shall be sent by registered mail or certified mail, return receipt requested, to each party. Within ten days of receipt of such notification, the chief executive officer of the municipal employer and the executive head of the municipal employee organization each shall select one member of the arbitration panel. Within five days of their appointment, the two members of the arbitration panel shall select a third member, who shall be an impartial representative of the interests of the public in general and who shall be selected from the panel of neutral arbitrators appointed pursuant to subsection (a) of this section. Such third member shall be the chairman of the panel. In the event that the municipal employer or the municipal employee organization have not selected their respective members of the arbitration panel or the two members of the panel have not selected the third member,

the State Board of Mediation and Arbitration shall appoint such members as are needed to complete the panel, provided (A) the member or members so appointed are residents of this state, and (B) the selection of the third member of the panel by the State Board of Mediation and Arbitration shall be made at random from among the members of the panel of neutral arbitrators appointed pursuant to subsection (a) of this section. . . .

"(d) (1) . . . As part of the arbitration decision, each member shall state the specific reasons and standards used in making his choice on each unresolved issue. . . . (2) In arriving at a decision, the arbitration panel shall give priority to the public interest and the financial capability of the municipal employer, including consideration of other demands on the financial capability of the municipal employer. The panel shall further consider the following factors in light of such financial capability: (A) The negotiations between the parties prior to arbitration; (B) the interests and welfare of the employee group; (C) changes in the cost of living; (D) the existing conditions of employment of the employee group and those of similar groups; and (E) the wages, salaries, fringe benefits, and other conditions of employment prevailing in the labor market, including developments in private sector wages and benefits. (3) The decision of the panel and the resolved issues shall be final and binding upon the municipal employer and the municipal employee organization except as provided in subdivision (5) of this subsection and, if such award is not rejected by the legislative body pursuant to said subdivision, except that a motion to vacate or modify such decision may be made in accordance with sections 52-418 and 52-419. . . . (5) Within twenty-five days of the receipt of an arbitration award issued pursuant to this section, *the legislative body of the municipal employer may reject the award of the arbitrators or single arbitrator* by a two-thirds majority vote of the members of such legislative body present at a regular or special meeting called and convened for such purpose. Within ten days after such rejection, the legislative body or its authorized representative shall be required to state, in writing, the reasons for such vote and shall submit such written statement to the State Board of Mediation and Arbitration and the municipal employee organization. Within ten days after receipt of such notice, the municipal employee organization shall prepare a written response to such rejection and shall submit it to the legislative body and the State Board of Mediation and Arbitration. Within ten days after receipt of such rejection notice, the State Board of Mediation and Arbitration shall select a review panel of three arbitrators or, if the parties agree, a single arbitrator who are residents of Connecticut and labor relations arbitrators approved by the American Arbitration Association and not members of the panel who issued the rejected award. Such arbitrators or single arbitrator shall review the decision on each such rejected issue. The review conducted pursuant to this subdivision shall be limited to the record and briefs of the hearing pursuant to subsection (c) of this section, the written explanation of the reasons for the vote and a written response by either party. In conducting such review, the arbitrators or single arbitrator shall be limited to consider-

ford board of education (board of education), appeal[3] from the judgment of the trial court, *Thim, J.*, dismissing their appeal from the decision of the named defendant, the state board of mediation and arbitration (board of mediation and arbitration).[4] In its decision, the board of mediation and arbitration had declined to select a review panel of arbitrators pursuant to § 7-473c (d) (5). In Docket Nos. 15346 and 15347 (mandamus action), the defendants, the board of mediation and arbitration and the United Automobile Workers Local 376 (union), appeal[5] from the judgment of the trial court, *Hauser, J.*, issuing a writ of mandamus in favor of the plaintiffs, the town and the board of education. That judgment required the board of mediation and arbitration to select a review panel of arbitrators pursuant to § 7-473c (d) (5). We affirm the judgments of the trial courts in all three appeals.

---

ation of the criteria set forth in subdivision (2) of this subsection. Such review shall be completed within twenty days of the appointment of the arbitrators or single arbitrator. The arbitrators or single arbitrator shall accept the last best offer of either of the parties. Within five days after the completion of such review the arbitrators or single arbitrator shall render a decision with respect to each rejected issue which shall be final and binding upon the municipal employer and the employee organization except that a motion to vacate or modify such award may be made in accordance with sections 52-418 and 52-419. The decision of the arbitrators or single arbitrator shall be in writing and shall include specific reasons and standards used by each arbitrator in making his decision on each issue. The decision shall be filed with the parties. The reasonable costs of the arbitrators or single arbitrator and the cost of the transcript shall be paid by the legislative body. Where the legislative body of a municipal employer is the town meeting, the board of selectmen shall perform all of the duties and shall have all of the authority and responsibilities required of and granted to the legislative body under this subsection. . . ." (Emphasis added.)

[3] The town and the board of education appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c).

[4] The other defendant is the United Automobile Workers Local 376.

[5] The board of mediation and arbitration and the union appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c).

The facts and procedural history are undisputed. The board of education and the union negotiated for a collective bargaining agreement covering certain noncertified employees of the board of education. Because the parties were unable to reach an agreement, pursuant to MERA, the dispute was referred to the board of mediation and arbitration for binding arbitration before a panel of arbitrators. The arbitration panel issued an award in September, 1993. Within twenty-five days of the award; see General Statutes § 7-473c (d) (5); the town council of Stratford (town council) voted to reject the award and, subsequently, gave timely written notice to the board of mediation and arbitration of that action and of its reasons therefor. Thereafter, the board of mediation and arbitration notified the town and the union that it would not select a review panel of arbitrators pursuant to § 7-473c (d) (5) because, in the view of the board of mediation and arbitration, the town council was not the "legislative body" of the board of education within the meaning of that statute.

Thereafter, the town and the board of education filed the administrative appeal in the trial court pursuant to General Statutes § 4-183 of the UAPA. In that action, the town and board of education sought an order requiring the board of mediation and arbitration to select a review panel of arbitrators pursuant to § 7-473c (d) (5). The board of mediation and arbitration moved to dismiss the administrative appeal. The trial court granted the motion to dismiss, reasoning that: (1) the board of mediation and arbitration is exempt from the UAPA by virtue of § 4-186 (c); and (2) the town and the board of education should have filed a motion to vacate the arbitration award pursuant to General Statutes § 52-418.[6] Accordingly, the trial court rendered judgment

---

[6] General Statutes § 52-418 provides: "Vacating award. (a) Upon the application of any party to an arbitration, the superior court for the judicial district in which one of the parties resides or, in a controversy concerning land, for the judicial district in which the land is situated or, when the court

dismissing the appeal. The town and the board of education appealed from that judgment.

The town and the board of education also thereupon brought the mandamus action, claiming that the board of mediation and arbitration was required, as a matter of law, to select a review panel of arbitrators pursuant to § 7-473c (d) (5). The trial court agreed, and rendered judgment issuing the writ of mandamus. Both the board of mediation and arbitration and the union filed appeals from that judgment, which were consolidated in this court prior to oral argument.

I

We first consider the appeal of the town and the board of education in the administrative appeal. If they were entitled to appeal under the UAPA from the action of the board of mediation and arbitration, their mandamus action could not be maintained because they would have had an adequate remedy at law. See *Vartuli* v. *Sotire*, 192 Conn. 353, 365, 472 A.2d 336 (1984).

The town and board of education claim that the trial court improperly dismissed their administrative appeal

is not in session, any judge thereof, shall make an order vacating the award if it finds any of the following defects: (1) If the award has been procured by corruption, fraud or undue means; (2) if there has been evident partiality or corruption on the part of any arbitrator; (3) if the arbitrators have been guilty of misconduct in refusing to postpone the hearing upon sufficient cause shown or in refusing to hear evidence pertinent and material to the controversy or of any other action by which the rights of any party have been prejudiced; or (4) if the arbitrators have exceeded their powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made.

"(b) If an award is vacated and the time within which the award is required to be rendered has not expired, the court or judge may direct a rehearing by the arbitrators.

"(c) Any party filing an application pursuant to subsection (a) of this section concerning an arbitration award issued by the State Board of Mediation and Arbitration shall notify said board and the attorney general, in writing, of such filing within five days of the date of filing."

under the UAPA because: (1) the exemption from the judicial appeal provisions of the UAPA for the board of mediation and arbitration does not apply to administrative and ministerial actions of that agency, including the failure to select a review panel of arbitrators under MERA; and (2) a motion to vacate an award under § 52-418 is not an appropriate remedy for the failure of the board of mediation and arbitration to select a review panel of arbitrators pursuant to § 7-473c (d) (5). Because we disagree with their first claim, we conclude that the trial court properly dismissed the administrative appeal.[7]

The town and board of education claim that the trial court improperly dismissed the administrative appeal because § 4-186 (c) does not exempt from the judicial appeal provisions of the UAPA the failure of the board of mediation and arbitration to perform an administrative or ministerial duty, such as the duty to appoint a review panel under § 7-473c (d) (5). We are not persuaded. We conclude that § 4-186 (c) exempts actions of the board of mediation and arbitration from judicial review by way of an administrative appeal under § 4-183, and that this exemption is not implicitly limited regarding administrative or ministerial functions of the board.

This claim presents a question of statutory interpretation. "[I]t is axiomatic that the process of statutory interpretation involves a reasoned search for the intention of the legislature. . . . In seeking to discern that intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation

---

[7] This conclusion renders it unnecessary to consider their second claim in the context of this appeal. We do, however, consider that same question in the context of the mandamus action. See footnote 10.

and common law principles governing the same general subject matter." (Citations omitted; internal quotation marks omitted.) *Izzo* v. *Meriden-Wallingford Hospital,* 237 Conn. 259, 266, 676 A.2d 857 (1996).

First, the language of § 4-186 (c) is clear and unequivocal: "The employment security division and *the Board of Mediation and Arbitration of the state labor department,* the claims commissioner, and the workers' compensation commissioner *are exempt from the provisions of section 4-176e and sections 4-177 to 4-183, inclusive.*" (Emphasis added.) Section 4-183 is the provision for judicial review of an agency decision by way of an administrative appeal under the UAPA. Thus, there is no suggestion in the language of § 4-186 (c) that it contains any implicit limitation.

Second, § 4-186 (c) does not exempt the board of mediation and arbitration from all the provisions of the UAPA; it exempts the board only from the provisions of General Statutes § 4-176e and General Statutes §§ 4-177 through 4-183. Section 4-176e[8] addresses who may conduct hearings by an agency. Sections 4-177 through 4-183 address, in general, contested cases and appeals to the court from final decisions in contested cases.

The UAPA does not begin and end, however, with those sections. General Statutes § 4-166 defines the terms used throughout the UAPA. General Statutes § 4-167 addresses such matters as the requirements of each agency regarding its organization, its procedural rules, and public access to its regulations and policy statements. General Statutes §§ 4-168 through 4-176 govern an agency's regulation-making process, including

---

[8] General Statutes § 4-176e provides: "Agency hearings. Except as otherwise required by the general statutes, a hearing in an agency proceeding may be held before (1) one or more hearing officers, provided no individual who has personally carried out the function of an investigator in a contested case may serve as a hearing officer in that case, or (2) one or more of the members of the agency."

declaratory rulings regarding regulations. The board of mediation and arbitration is subject to those provisions of the UAPA.

The careful delineation by the legislature in § 4-186 (c) of the limitation on the scope of the exemption of the board of mediation and arbitration from certain provisions of the UAPA strongly counsels against our reading in a limitation that is not expressly stated in the statute. Furthermore, some of the functions addressed by the provisions of the UAPA to which the board of mediation and arbitration is subject are administrative, rather than adjudicative. This reinforces our caution against reading in the limitation urged by the town and the board of education.

Third, contrary to the argument of the town and board of education, the legislative history of the exemption at issue is insufficient to compel a different construction. It is true that when, in 1975, House Bill No. 6231, which ultimately became the exemption at issue in this case, was introduced in the Senate the mediation and arbitration functions of the board were uppermost in the minds of the legislators.[9] Although we have on occasion relied in part on legislative history to narrow what might otherwise be regarded as broad statutory language; see, e.g., *Elections Review Committee of the Eighth Utilities District* v. *Freedom of Information*

---

[9] Senator David H. Neiditz stated: "I now move passage of the Bill, as amended. The main body of the Bill would exempt the Board of Mediation and Arbitration from the operation of the Act. The very nature of mediation and arbitration is not an adversary proceeding and has a different set of rules and different set of values, you might say and it would work a hardship on getting parties together in a labor dispute if the mediation process or indeed, the arbitration process is subject to the UAPA. There obviously would still be other remedies in court to overturn an arbitration decision under the pre-existing standard, such as the arbitrator was arbitrary, capricious and in abuse of discretion. So, I think it's something that we worked on and I think it should be passed. I move it to consent." 18 S. Proc., Pt. 5, 1975 Sess., p. 2283.

*Commission*, 219 Conn. 685, 595 A.2d 313 (1991); the legislative history is not compelling enough to persuade us to do so in the present case. Not only is the language of the exemption broad and straightforward, but also the exemption itself is limited in scope, as explained previously. Thus, we cannot conclude that these remarks, which focus on those functions of the board of mediation and arbitration, also mean that the legislature intended that *only* those functions are exempted from the appeal provisions of the UAPA.

The town and board of education argue that, unless we adopt their interpretation of § 4-186 (c), bizarre results will ensue because errant administrative and ministerial acts of the board of mediation and arbitration will escape judicial review. We disagree.

The fact that certain conduct of an agency is not subject to the administrative appeal provisions of the UAPA does not mean that such conduct automatically escapes judicial review. Rather, it means only that such conduct escapes judicial review pursuant to an appeal under the UAPA. Other avenues of judicial review, such as an action for a writ of mandamus, may remain, as we discuss in part II of this opinion. Although review by way of mandamus involves more exacting standards than those employed under the UAPA, there is nothing bizarre or anomalous about the legislative choice to subject the conduct of this agency to those more exacting standards.

## II

Having concluded that the trial court properly dismissed the administrative appeal, we next consider, in the mandamus action, the appeal of the union and the board of mediation and arbitration. Identifying the "legislative body of the municipal employer" is crucial in this appeal, because the trial court issued the writ of mandamus predicated on its conclusion that the town

council was the legislative body of the municipal employer. The union and the board of mediation and arbitration argue, however, that the board of education was the legislative body. If the union and the board of mediation and arbitration are correct, then the board of education has not timely rejected the award under § 7-473c (d) (5) and, therefore, neither the town nor the board of education may receive relief via mandamus. We conclude that the town council was the "legislative body of the municipal employer."

"It is well established that mandamus will issue only if the plaintiff can establish: (1) that the plaintiff has a clear legal right to the performance of a duty by the defendant; (2) that the defendant has no discretion with respect to the performance of that duty; and (3) that the plaintiff has no adequate remedy at law." *Vartuli* v. *Sotire*, supra, 192 Conn. 365. The third requirement is satisfied by our previous conclusion that the town and the board of education were not entitled to appeal under the UAPA. None of the parties has suggested, nor can we conceive of, any other adequate legal remedy available to the town and board of education in this case.[10]

---

[10] In their briefs, all of the parties assumed that this third requirement for mandamus was satisfied if there were no appeal under the UAPA. Nonetheless, we directed the parties to be prepared to address at oral argument the question of whether the filing of a motion to vacate the arbitration award pursuant to § 52-418 could constitute an adequate legal remedy that would preclude mandamus. That question, therefore, was considered at oral argument. We conclude that a motion to vacate an arbitration award under § 52-418 is not an appropriate method of challenging the failure of the board of mediation and arbitration to select a review panel of arbitrators pursuant to § 7-473c (d) (5). There are significant differences between the two statutory schemes that compel this conclusion.

Under § 52-418 (a), the court may grant an application to vacate an arbitration award on any of four grounds: (1) the award was procured by corruption, fraud or undue means; (2) an arbitrator was guilty of partiality or corruption; (3) the arbitrators were guilty of misconduct in refusing to postpone the hearing, in refusing to hear pertinent and material evidence, "or of any other action by which the rights of any party have been prejudiced"; or (4) the

The parties also agree, as do we, that the first two requirements for mandamus in this case distill into the question of whether the town council or the board of education is the "legislative body of the municipal employer," as that phrase is used in § 7-473c (d) (5). We conclude that the trial court properly determined that the town council is the legislative body of the municipal employer.

arbitrators exceeded their powers, or so imperfectly executed them, "that a mutual, final and definite award upon the subject matter submitted was not made." If the court concludes that any of these defects is present, the court "shall make an order vacating the award"; General Statutes § 52-418 (a); and, if the award is vacated "and the time within which the award is required to be rendered has not expired, the court . . . may direct a rehearing by the arbitrators." General Statutes § 52-418 (b).

This statutory scheme is quite different from that providing for a review panel of arbitrators under § 7-473c (d) (5). Under that statutory scheme, which is part of the binding, last best offer arbitration provisions of MERA, in order for the legislative body of the municipal employer to require the board of mediation and arbitration to appoint a review panel of arbitrators, the legislative body need not allege or establish any of the defects stated in § 52-418. Moreover, unlike § 52-418, the consequence of a request by the legislative body of the municipality is the appointment of a review panel of arbitrators, or one reviewing arbitrator, whose function is not to rehear the arbitration case, but whose "review . . . shall be limited to the record and briefs of the hearing . . . the written explanation of the reasons for the vote [of the legislative body of the municipality] and a written response by either party." General Statutes § 7-473c (d) (5). Thus, an application to vacate under § 52-418 does not invoke the same standards, and will not yield the same or similar consequences, as a request for the appointment of a review panel under § 7-473c (d) (5).

Indeed, by making reference to each other, both § 7-473c (d) and § 52-418 specifically contemplate that, in addition to a request for a review panel of arbitrators under § 7-473c by the legislative body of a municipality, either party to the binding arbitration process under MERA may file a petition with the court pursuant to § 52-418 to vacate an arbitration award rendered under MERA. In that event, however, the petitioner would be required to establish one of the four defects stated in § 52-418, and the remedy would not be the appointment of a review panel of arbitrators but the remedies provided by § 52-418.

We need not detail all of the differences between the two arbitral statutory schemes. Suffice it to say that the two provisions are sufficiently different to persuade us that a motion to vacate under § 52-418 cannot act as a surrogate for a request for a review panel of arbitrators under § 7-473c (d) (5).

In order to place this question in its proper context, a brief overview of this part of MERA is useful. Section 7-473c (b) calls for "binding and final arbitration" between a municipal employer and a municipal employee organization or union, when they have reached an impasse in their collective bargaining. In general, each party selects one arbitrator and a third arbitrator is selected by the board of mediation and arbitration from a panel of neutral arbitrators selected by the neutral arbitrator selection committee appointed by the state labor commissioner pursuant to § 7-473c (a). See General Statutes § 7-473c (b); see also *International Brotherhood of Police Officers, Local 564* v. *Jewett City*, 234 Conn. 123, 125, 661 A.2d 573 (1995) (parties may waive rights under MERA).

The arbitral process is that of last best offer. Pursuant to that process, after the parties have stipulated in writing to all items on which they are in agreement, each side presents in writing its last best offer with respect to each unresolved issue. Thereafter, the arbitration panel "shall issue, upon majority vote . . . its decision on all unresolved issues." General Statutes § 7-473c (d) (1). The panel must treat each unresolved issue separately, and decide each such issue in accordance with the last best offer of one of the parties. In addition, "[a]s part of the arbitration decision, each member shall state the specific reasons and standards used in making his choice on each unresolved issue." General Statutes § 7-473c (d) (1).

The statute sets forth the standards to be employed by the arbitration panel. "In arriving at a decision, the arbitration panel shall give priority to the public interest and the financial capability of the municipal employer . . . ." General Statutes § 7-473c (d) (2). In addition, § 7-473 (d) (2) provides that the panel further consider certain factors "in light of such financial capability." These factors are: the prior negotiations of the parties;

the interests and welfare of the employees; changes in the cost of living; conditions of employment of the employee group and those of similar groups; and wages, salaries, fringe benefits and other conditions of employment prevailing in the labor market, including the private sector. General Statutes § 7-473c (d) (2) (A) through (E). Section 7-473c (d) (3) provides: "The decision of the panel and the resolved issues shall be final and binding upon the municipal employer and the municipal employee organization except as provided in subdivision (5) of this subsection and, if such award is not rejected by the legislative body pursuant to said subdivision, except that a motion to vacate or modify such decision may be made in accordance with sections 52-418 and 52-419."

This brings us to the statutory provision at issue in this case. Section 7-473c (d) (5), which was enacted in 1992 as part of No. 92-84 of the 1992 Public Acts (P.A. 92-84), provides in part: "Within twenty-five days of the receipt of an arbitration award issued pursuant to this section, *the legislative body of the municipal employer* may reject the award of the arbitrators or single arbitrator by a two-thirds majority vote of the members of such legislative body present at a regular or special meeting called and convened for such purpose."[11] (Emphasis added.)

The parties agree that the board of education is the "municipal employer" under MERA in this case,

---

[11] Following such a rejection, the board of mediation and arbitration selects a review panel of three arbitrators, who review the first decision based solely on the record of the first arbitration proceeding supplemented by the written objections and responses thereto. This review panel, using the same criteria specified in § 7-473c (d) (2), and also limited to the last best offers submitted on each issue, then issues a second decision, which is, absent a petition to vacate or modify pursuant to § 52-418 or General Statutes § 52-419, final and binding on the parties. General Statutes § 7-473c (d) (5).

because the collective bargaining and binding arbitration contemplated the eventual execution of a contract between the union and the board of education. Under General Statutes § 7-467 (1), the board of education was the municipal employer of the bargaining unit in question.[12] The question, however, is whether the "legislative body of the municipal employer" is the town council, as the town and board of education claim, or the board of education, as the union and board of mediation and arbitration claim.

We begin with the language of the statute. The legislature employed the term "legislative body." General Statutes § 1-1 (m) provides, with one exception not relevant here, that "the words 'legislative body' . . . as applied to cities and consolidated towns and cities, shall mean the board of aldermen, council or other body charged with the duty of making annual appropriations."[13] Pursuant to the Stratford charter, the town council has the power to make annual appropriations. This legislative use of a specifically defined statutory term strongly suggests, if not compels, the conclusion that the legislature intended to incorporate that definition into § 7-473c (d) (5) when it enacted that subdivision in 1992.

---

[12] General Statutes § 7-467 (1) provides: " 'Municipal employer' means any political subdivision of the state, including any town, city, borough, district, district department of health, school board, housing authority or other authority established by law, a private nonprofit corporation which has a valid contract with any town, city, borough or district to extinguish fires and to protect its inhabitants from loss by fire, and any person or persons designated by the municipal employer to act in its interest in dealing with municipal employees . . . ."

[13] General Statutes § 1-1 (m) provides: "Except as provided in section 7-452, the words 'legislative body', as applied to unconsolidated towns, shall mean the town meeting; as applied to cities and consolidated towns and cities, shall mean the board of aldermen, council or other body charged with the duty of making annual appropriations; as applied to boroughs and consolidated towns and boroughs, shall mean the board of burgesses; as applied to all other districts and associations, shall mean the district committee or association committee or other body charged with the duty of making annual appropriations."

Furthermore, the term "legislative body" in its normal usage ordinarily means a body that enacts laws. See, e.g., Webster's Third New International Dictionary (1986) (defining "legislation" as "the making or giving of laws [as by an individual or an organized body]; specif: the exercise of the power and function of making rules [as laws, ordinances, edicts] having the force of authority by virtue of their promulgation by an official organ of a state or other organization"). At the municipal level, the lawmaking function generally takes the form of enacting ordinances. Although a local board of education has an important role in setting educational policy, its responsibilities do not customarily encompass the enactment of ordinances.

In addition, the purpose of § 7-473c (d) (5), as disclosed by its legislative history and by other simultaneous amendments to § 7-473c, buttresses the conclusion that the "legislative body of the municipal employer" was intended to mean the local body that has the responsibility for making appropriations and levying taxes. The legislative history indicates that in 1992, the legislature undertook to amend MERA[14] in response to apparently widespread perceptions on the part of municipal officials that the binding arbitration process had yielded results that did not sufficiently take into account local financial conditions. A principal purpose of the 1992 amendments was to give a say in the ultimate result of the process to the local officials who were accountable for local finances. The legislation accomplishing that purpose was modeled in part after existing legislation that gives the General Assembly a say in

[14] In enacting P.A. 92-84, which amended MERA, the legislature also amended the Teacher Negotiation Act (TNA), General Statutes § 10-153a et seq. The legislative history of P.A. 92-84 indicates that the legislature intended to address the same problems that it perceived under both MERA and TNA. We focus our discussion on MERA.

binding arbitration awards for state employees. See General Statutes § 5-278 (b).[15]

The testimony on House Bill No. 5566 before the joint standing committee on labor and public employees, which ultimately became P.A. 92-84, strongly supports this reading of the principal purpose of the legislation.[16]

[15] General Statutes § 5-278 (b) provides: "Any agreement reached by the negotiators shall be reduced to writing. The agreement, together with a request for funds necessary to fully implement such agreement and for approval of any provisions of the agreement which are in conflict with any statute or any regulation of any state agency, and any arbitration award, issued in accordance with section 5-276a, together with a statement setting forth the amount of funds necessary to implement such award, shall be filed by the bargaining representative of the employer with the clerks of the house of representatives and the senate within ten days after the date on which such agreement is reached or such award is distributed. The general assembly may approve any such agreement as a whole by a majority vote of each house or may reject such agreement as a whole by a majority vote of either house. The general assembly may reject any such award as a whole by a two-thirds vote of either house if it determines that there are insufficient funds for full implementation of the award. If rejected, the matter shall be returned to the parties for further bargaining. Once approved by the general assembly, any provision of an agreement or award need not be resubmitted by the parties to such agreement or award as part of a future contract approval process unless changes in the language of such provision are negotiated by such parties. Any supplemental understanding reached between such parties containing provisions which would supersede any provision of the general statutes or any regulation of any state agency or would require additional state funding shall be submitted to the general assembly for approval in the same manner as agreements and awards. If the general assembly is in session, it shall vote to approve or reject such agreement or award within thirty days after the date of filing. If the general assembly is not in session when such agreement or award is filed, it shall be submitted to the general assembly within ten days of the first day of the next regular session or special session called for such purpose. The agreement or award shall be deemed approved if the general assembly fails to vote to approve or reject such agreement or award within thirty days after such filing or submission. The thirty-day period shall not begin or expire unless the general assembly is in regular session. For the purpose of this subsection, any agreement or award filed with the clerks within thirty days before the commencement of a regular session of the general assembly shall be deemed to be filed on the first day of such session."

[16] For example, William J. Cibes, Jr., the secretary of the office of policy and management, stated: "The administration recognizes the urgent need

The floor debate in the House of Representatives strongly supports the conclusion that the purpose of § 7-473c (d) (5) was to vest the right to reject, in the

for municipalities to have the ability to respond to the serious problems facing them during this time of fiscal crisis with as much freedom from state restrictions as possible. [The office of policy and management] supports this legislation which will improve the ability of municipalities to control their own destinies and to institute long term cost containment measures." Joint Standing Committee Hearings, Labor and Public Employees, Pt. 2, 1992 Sess., p. 407.

Cibes also stated that the proposed legislation "allows the local legislative body to reject an arbitration award provided the reasons for doing so are specified. . . . I think it's important that, particularly in the case of binding arbitration, Connecticut's taxpayers want to be part of the process. They feel that their elected representatives are prohibited from participating in the very decision making which has such a major impact on local taxes." Id., p. 409.

During the same hearing, Representative Dale W. Radcliffe referred to the state procedures on which the proposal was modeled. He asked a witness: "If binding arbitration has been successful for state employees, would you be in favor of or opposed to giving local legislative bodies the same power the General Assembly has regarding collective bargaining agreements if in fact it has made for a successful process?" Id., p. 438.

Donald St. Pierre, the chairman of the town council of Plainville stated: "Seventeen years ago I sat in this house as a state representative and I voted for the binding arbitration law. The legislative intent 17 years ago was to correct three political situations that existed in the state of Connecticut, three cities, Bridgeport, New Haven and Hartford. We passed that law. Where it's gone from there is unbelievable. All I ask is give the local legislators like myself, the town councils, the chance to participate, to be able to say to the taxpayer, 'we did it, not an arbitrator.' I think we in our towns could do these things, but give us the power and the opportunity to do it." Id., p. 440.

Saranne P. Murray, representing the Connecticut Public Employer Relations Association, "support[ed] the changes in the statutory factors which arbitrators are to consider in making binding arbitration awards. The increased emphasis on the public interest and financial capability of the municipality including other demands on the municipalities' financial resources, and also the ability to make comparisons with developments in the private sector are critical.

"We also support the opportunity for municipalities to reject arbitration awards by a two-thirds majority vote. We believe that this is consistent with the strong home rule tradition of the state of Connecticut, would return decision making to the local level and urge the General Assembly to neither . . . nor condone delegation of these important decision making powers to a third party." Id., p. 455.

first instance, an arbitration award under MERA in the local body that was most directly accountable to the local taxpayers, and that, therefore, the legislature intended the phrase "legislative body of the municipal employer" to mean, in a municipality such as Stratford, the town council.[17]

Moreover, other parts of P.A. 92-84 reinforce this reading of § 7-473c (d) (5). By that same legislation,

---

[17] Representative Joseph A. Adamo, for example, argued that the arbitrators "must take into consideration the priority of the public interest and the financial capability of the municipal employer, including the consideration of other demands on the financial capability of a town . . . . We think that the criteria that has been added, adds to the arbitrators' decision, the need to take a much closer, a much closer look at the city or town's ability to pay and capability to pay, based on not only the evidence before it, but on the evidence related to those factors that might otherwise affect the town based on, for example, outstanding indebtedness, outstanding high tax structures and the like." 35 H.R. Proc., Pt. 6, 1992 Sess., pp. 1858–59.

Representative Brian J. Flaherty noted that "if a state employee contract goes to binding arbitration, there are provisions for the state's legislative body, namely, us, to overturn that award by a two-thirds vote of both chambers.

"Unfortunately, and I think as we all know too well, that our municipalities do not have this power. This amendment would give them that power by a two-thirds override within 30 days after an arbitration award is issued. After that is issued, the legislative body will notify in the case of a teacher award, the Commissioner of Education and in the case of a municipal binding arb[itration] award that's non-teacher will notify the State Board of Mediation and Arbitration and one or three arbitrators will be appointed to serve as a review panel. . . .

"The board will review the prior arbitration, the rejection and a written appeal that will be given, a written reply given from the other party and then they will have 20 days to make their review and 5 days after that to issue an award. . . . I think it provides for a very tight process and I will add something else this amendment does.

"First of all, the cost. Who's going to pay for it? The legislative body that overrides this will have to pick up the tab and they'll know that going into it.

"And secondly, there has been some concern expressed that whatever two-thirds override it was, it would blow out the process too long and we would not be able to meet our time lines. The towns would not be able to submit their budgets on time. . . .

"We will have closure. We will have most importantly, a local voice in determining what happens. The taxpayers will have their elected representa-

the legislature amended § 7-473c in other respects that reflect a legislative emphasis on the public interest and the financial capabilities of the municipalities engaged in the collective bargaining process.

Thus, P.A. 92-84 amended § 7-473c by adding what is now subsection (a). Subsection (a) of § 7-473c provides for the appointment by the labor commissioner of a "neutral arbitrator selection committee," whose function is to appoint "a panel of neutral arbitrators consisting of not less than twenty impartial persons representing the interests of the public in general to serve as provided in this section." These neutral arbitrators serve as the pool from which the third, and often deciding, arbitrator is chosen for the binding arbitration process under MERA. This legislative emphasis on the interests of the public is reinforced by other language of P.A. 92-84 amending what is now § 7-473c (b), providing that after each side has selected its arbitrator for purposes of the binding arbitration process, those two members shall select from this panel a third member "who shall be an impartial representative of the interests of the public." Moreover, in P.A. 92-84, the legisla-

tives on their legislative bodies, able to stop a runaway train that some of these awards have been, similarly as we do. Because when three private individuals such as arbitrators, come into a town and they make an award, they leave, and they are not accountable to the people of that town who must live with the decision." Id., pp. 1864–66.

Representative Flaherty also observed that "[t]he intent of both of these subsections, and it is, and it should be mirrored that again, that legislative body is, will perform the duties where there is a town meeting." Id., p. 1895.

Representative Robert A. Maddox stated: "I think that we're losing some sight of what this amendment attempts to do. It brings back some control to the municipalities over the process. . . . We're saying to them, we're going to return to you some degree of control if a binding arbitration comes down that you believe is wrong." Id., pp. 1902–1903.

According to Representative J. Vincent Chase, "this is a very simple amendment. It says we're going to tell, excuse me, it says we're going to allow our local officials the option to override an agreement that they may feel they can't afford. We're not completely eliminating binding arbitration because it still has to go back to an arbitration panel." Id., p. 1904.

ture inserted into what is now § 7-473c (d) (2), the provision that "[i]n arriving at a decision, the arbitration panel shall give priority to the public interest and the financial capability of the municipal employer."

The union and board of mediation and arbitration argue, to the contrary, that the phrase "legislative body of the municipal employer" means the board of education because: (1) in General Statutes § 7-474 (b)[18] the legislature used the phrase "bargaining representative of the municipality," signifying that there is a difference between the municipal employer and the municipality, and that when "the Connecticut legislature intended to refer to 'the legislative body of the municipality,' it did so explicitly"; (2) the legislative history of MERA discloses that under that statutory scheme, the municipal-

---

[18] General Statutes § 7-474 (b) provides: "Any agreement reached by the negotiators shall be reduced to writing. Except where the legislative body is the town meeting, a request for funds necessary to implement such written agreement and for approval of any provisions of the agreement which are in conflict with any charter, special act, ordinance, rule or regulation adopted by the municipal employer or its agents, such as a personnel board or civil service commission, or any general statute directly regulating the hours of work of policemen or firemen or any general statute providing for the method or manner of covering or removing employees from coverage under the Connecticut municipal employees' retirement system or under the Policemen and Firemen Survivors' Benefit Fund shall be submitted by the bargaining representative of the municipality within fourteen days of the date on which such agreement is reached to the legislative body which may approve or reject such request as a whole by a majority vote of those present and voting on the matter; but, if rejected, the matter shall be returned to the parties for further bargaining. Failure by the bargaining representative of the municipality to submit such request to the legislative body within such fourteen-day period shall be considered to be a prohibited practice committed by the municipal employer. Such request shall be considered approved if the legislative body fails to vote to approve or reject such request within thirty days of the end of the fourteen-day period for submission to said body. Where the legislative body is the town meeting, approval of the agreement by a majority of the selectmen shall make the agreement valid and binding upon the town and the board of finance shall appropriate or provide whatever funds are necessary to comply with such collective bargaining agreement."

ity plays no role in the collective bargaining process, unlike under the Teacher Negotiation Act (TNA), General Statutes § 10-153a et seq.; and (3) the trial court's conclusion gave insufficient weight to the interpretation given to the statute by the board of mediation and arbitration, which is the body charged with its enforcement. These arguments are unavailing.

First, although we agree that the terms "municipal employer" and "municipality" have different meanings, if we were to accept the argument of the union and board of mediation and arbitration that the board of education is the "legislative body of the municipal employer," we would have to conclude that the board of education is both the municipal employer and the legislative body of the municipal employer. That would mean, in turn, that in the context of this case, the term "municipal employer" is superfluous. We do not normally read legislative language as superfluous.[19] See, e.g., *Stewart* v. *Tunxis Service Center*, 237 Conn. 71, 79, 676 A.2d 819 (1996).

Second, the fact that the legislature used the word "municipality" in § 7-467 (1), and did not do so in § 7-473c (d) (5), cannot overcome the other strong indications that its use of the phrase "legislative body of the municipal employer" was intended to have the same meaning as legislative body of the municipality. That is the meaning that makes the most sense, given the language that it did use and its evident purpose.

Similarly, the fact that, under MERA, unlike under TNA, the legislative body of the municipal employer is not injected into the process until after the arbitrators' first decision, is not determinative of the meaning of

---

[19] We recognize that there may be some cases in which the factual context compels a finding that the municipal employer and the legislative body of the municipal employer are one and the same. That, however, is not the case here.

"legislative body of the municipal employer" under MERA. The legislature's employment of the state-level model in this respect, pursuant to which the General Assembly plays no role in the collective bargaining process until after the arbitrators' decision, sufficiently explains this difference in treatment between MERA and TNA.

Finally, we are unpersuaded that we should attach special significance to the administrative interpretation of § 7-473c (d) (5) by the board of mediation and arbitration. Because the phrase "legislative body of the municipal employer" is of recent vintage, the board's interpretation thereof is of similar recent vintage. Moreover, the phrase has not, until this case, been the subject of judicial interpretation, and in such cases we ordinarily discount the weight given to administrative interpretation of legislative language. See *Starr* v. *Commissioner of Environmental Protection*, 236 Conn. 722, 736, 675 A.2d 430 (1996).

The judgments are affirmed.

In this opinion the other justices concurred.