BOARD OF EDUCATION OF THE CITY OF BRIDGEPORT
*v.* BRIDGEPORT EDUCATION ASSOCIATION ET AL.
(4642)

BORDEN, SPALLONE and DALY, Js.

Argued October 15—decision released November 25, 1986

*Martin A. Gould,* with whom, on the brief, was *Alfred J. Garofolo,* for the appellant (named defendant).

*William H. Narwold,* with whom were *Scott R. Lucas* and, on the brief, *Fredric H. Weisberg,* for the appellee (plaintiff).

BORDEN, J. The issue in this appeal involves whether the civil service provisions of the charter of the city of Bridgeport require that the appointment of teachers from within the school system to administrative

positions within the system be made pursuant to civil service examinations. The named defendant appeals[1] from the judgment of the trial court on the plaintiff's complaint for a declaratory judgment. That judgment declared in effect that no such examinations are required. We find no error.

The facts are undisputed. The plaintiff employs state certified persons as teachers, supervisors and administrators in the Bridgeport public school system. The defendant is the recognized collective bargaining representative of the teachers unit in the school system. The Civil Service Act of the city (the act) was created in 1935 by the legislature as part of the Bridgeport city charter. The Bridgeport civil service commission was created by the act. The act categorizes employees into classified or unclassified civil service. No competitive civil service examination is required by the act or by the rules of the commission for positions in the unclassified service.

Pursuant to § 3 (e) of the act, as amended in 1963, the unclassified service includes "all classes of teachers in the school system of the city so far as their original appointments thereto are concerned." A "teacher" within the meaning of the act includes any state certified principal, supervisor or administrator in the school system, except the superintendent and the assistant superintendent of schools. A "class" is defined by the act as a position or group of positions "sufficiently similar in respect to their duties and responsibilities so that the same requirements as to education, experience, knowledge, ability and other qualifications are required of the incumbents . . . ." Administrative positions,

---

[1] The other defendants in the trial court were the Bridgeport civil service commission, the Bridgeport Council of Administrators and Supervisors Local 46, AFSA, and an individual intervening defendant. Prior to trial, the complaint was withdrawn as against the individual defendant. Only the named defendant, to whom we refer as the defendant, appealed.

such as principals and supervisors, constitute a "class," and when a teacher is appointed to an administrative position the teacher has moved to a new "class." The term "appointment" is defined by the rules of the commission as "the designation by a legally constituted authority of a person to occupy a position, pursuant to the provisions of the charter." The act, which does not specifically define the word "appointment," provides that it "shall be construed to mean 'promotion' when the context shall permit and shall so indicate . . . ." The act defines the word "promotion" as follows: "a change from one class of position to another class of position having a higher rate of compensation and involving a change of duties and responsibilities and requiring a competitive civil service examination, and shall be construed to mean appointment or employment where the context shall permit and shall so indicate . . . ." Furthermore, the class of position of administrator has a higher rate of compensation than that of classroom teacher, and involves a change of duties and responsibilities.

The plaintiff brought this action seeking a declaratory judgment that, inter alia, the first appointment of a teacher to a class of positions is within the unclassified service and therefore not subject to the requirement of a competitive civil service examination.[2] The trial court agreed with the plaintiff, and rendered a

[2] The genesis of this action was an action originally brought in 1974. That action was removed to the United States District Court for the District of Connecticut which, in turn, referred the parties back to the state courts for determination of the applicability of the act and the rules of the commission. This action was then brought in 1979. While it was pending, the United States District Court, in a different case, entered an order requiring the plaintiff in this case to engage in specified minority hiring practices and to make administrative appointments without regard to the act. In 1985, this action was, therefore, dismissed by the trial court as moot. Subsequently, the United States District Court rescinded its order, and consequently the judgment of dismissal was opened by the trial court and this case was litigated, resulting in the judgment under appeal. Therefore, we

judgment that the appointment of teachers to administrative positions falls within the unclassified service pursuant to § 3 (e) of the act.

The defendant claims that the court erred in its conclusion because its reading of the act ignores the concept of "promotion" of teachers pursuant to the act, because the 1963 amendment to the act indicates that § 3 (e) applies only to a teacher's initial entry into the school system, and because the court misread the case of *Svihra* v. *Samuelson,* 125 Conn. 16, 2 A.2d 383 (1938). Although the proper answer is far from clear, and although the defendant's textual analysis of the act would have much to commend it as a matter of first instance, we disagree with the defendant.

We begin our analysis with *Svihra* v. *Samuelson,* supra. That case was a declaratory judgment action concerning the validity of the appointments of three nonelementary school teachers in Bridgeport to the positions of principals of elementary schools. At that time, § 3 (e) of the act placed within the unclassified service "teachers in the *elementary system* of the city, *so far as their appointments thereto are concerned."* (Emphasis added.) *Svihra* v. *Samuelson,* supra, 19. The Supreme Court posed the "decisive issue [as] whether the action of the board of education relating to these three persons was, as the trial court held, the appointment of teachers in the elementary school system, or a promotion as defined by the legislative act." Id., 18. The court looked to the definition of "promotion" in § 24 of the act, which provided then, as it does now, that "three essential elements must concur. There must be a change to a position (1) having a higher rate of compensation, and (2) involving a change of duties and

have no recent practical construction of the act by the parties charged with its enforcement to aid us in its interpretation; cf. *Bridgeport Metal Goods Mfg. Co.* v. *Administration,* 2 Conn. App. 1, 2, 475 A.2d 329 (1984); and the record is bereft of any such information prior to the order of the federal court in 1979.

responsibilities, and (3) the position to which the change is made must be one for which a competitive civil service examination is required." Id., 21. The court held that "since it follows from our conclusions that the exception [from the classified service] of Section 3 (e) applies, *no competitive examination was required* and therefore the third requisite is wanting as to all three positions." (Emphasis added.) Id. We can only read *Svihra* to interpret the act as meaning that (1) when a teacher is transferred to a supervisory or administrative position, such as a principalship, that transfer is not a "promotion" within the meaning of the act because it does not require a civil service examination, and (2) therefore it is an "appointment" within the meaning of the act.

It is true that the facts of *Svihra* involved only initial appointments in elementary schools as principals, because the act at that time only placed within the unclassified service appointments in the elementary school system. It is also true, however, that the reasoning of *Svihra* was based on the meaning of the term "promotion" and, by implication, its counterpart, "appointment." Therefore, the rationale of *Svihra* leads to the conclusion that, in this case, the change of position from classroom teacher to administrative position would be an "appointment" and not a "promotion."

It may be, as the defendant argues, that the reasoning of the *Svihra* court was circular, or at least oval. It may also be that it is not clear that "it follows from [the court's] conclusions that . . . no competitive examination was required"; id; since that was at bottom the issue in the case, not the answer. We are not free, however, to disregard *Svihra* as Supreme Court precedent; see *O'Connor* v. *O'Connor,* 4 Conn. App. 19, 20, 492 A.2d 207, cert. granted, 196 Conn. 812, 495 A.2d 280 (1985); particularly since it involved a ques-

tion of statutory interpretation. *D'Arcy* v. *Shugrue,* 5 Conn. App. 12, 29, 496 A.2d 967 (1985). After *Svihra,* therefore, the state of interpretation of the city charter of Bridgeport relevent here was that when a nonelementary teacher became an elementary principal, that move was not a "promotion," but was an appointment as an elementary teacher, because such a move did not require a civil service examination.

In 1963, the legislature amended the city charter. 31 Spec. Acts 48, No. 65. Section 1 of the special act amended the language of § 3 (e) of the act to place within the unclassified service "[a]ll classes of teachers in the school system of the city so far as their original appointments thereto are concerned." Prior to this amendment, the board of education of Bridgeport was hampered in its efforts to hire nonelementary school teachers, because only elementary school teachers were in the unclassified service. Thus, the board was required to hire nonelementary school teachers only through competitive civil service examinations. This caused difficulties in the hiring process. Also, a transfer of a teacher from one teaching assignment, e.g., Spanish, to another, e.g., French, also required a civil service examination. The legislative history of the 1963 special act; 10 S. Proc., Pt. 3, 1963 Sess., pp. 962–63; including the statements of witnesses before the legislative committee considering the bill which eventually became the special act; Conn. Joint Standing Committee Hearings, Cities and Boroughs, 1963 Sess., pp. 1–8; which we have examined,[3] indicates that the principal purpose of the special act was to cure these difficulties.

---

[3] There is Supreme Court authority for the proposition that testimony before a legislative committee is not properly cognizable by a court as legislative history. See, e.g., *Anderson* v. *Ludgin,* 175 Conn. 545, 554 n.8, 400 A.2d 712 (1978). More recent Supreme Court authority has, however, recognized such testimony as a legitimate aid to interpretation of legislation. See, e.g., *Nationwide Ins. Co.* v. *Gode,* 187 Conn. 386, 391 n.5, 395–96, 446 A.2d 1059 (1982).

"The legislature is presumed to be mindful of the judicial construction of relevant legislation." *Nationwide Ins. Co.* v. *Gode,* 187 Conn. 386, 395 n.7, 446 A.2d 1059 (1982). We must presume that when the special act was passed in 1963 the legislature was aware of *Svihra* v. *Samuelson,* supra. We see nothing in either the special act or its legislative history evincing an intent to change the meaning given to the term "promotion" by the court in *Svihra.*

It is true, as the defendant points out, that the testimony on the bill before the legislative committee included an exchange between Senator John F. Pickett and Joseph Porter, the then superintendent of schools of Bridgeport, in which Porter indicated that the bill would eliminate the civil service examination for appointment but "would retain the test for [a] promotion." Conn. Joint Standing Committee Hearings, Cities and Boroughs, 1963 Sess., p. 8. Whatever Porter meant by "promotion" in that context, we do not read that sole remark among eight pages of committee testimony as evincing legislative intent to overrule the meaning given to the statutory term by the *Svihra* court. There is no mention in the floor debate on the bill of any intended effect on the concept of promotion of teachers as defined by the *Svihra* decision.

Textual analysis of the 1963 amendment lends support to the plaintiff's position. The amendment changed the language of § 3 (e) from "teachers in the elementary system of the city, so far as their appointments thereto are concerned" to "[a]ll *classes of teachers* in the school system of the city so far as their *original* appointments thereto are concerned." (Emphasis added.) The defendant, focusing on the words "original appointments thereto," argues that the amendment was meant only to except from the classified service the original appointment of a teacher to the school system itself, rather than to a "class" of teachers. We

agree, however, with the plaintiff that the amendment was meant to apply to the original appointment of a teacher to a "class" of teaching positions, rather than to the school system. Otherwise, the insertion of the word "classes" would be rendered superfluous. It is undisputed that when a teacher is appointed to an administrative position, the teacher has moved to a new "class." Thus, when a teacher is first appointed as a principal, for example, the teacher has received an "original appointment" to a different "class" of teaching position within the meaning of the act.

The defendant's argument that this holding would render the concept of "promotion" under the act meaningless is without avail. First, we need not decide in this case when a teaching "promotion" takes place within the meaning of the act. *Svihra* instructs that it does not take place when a teacher becomes a principal or administrator. Whatever frailty there may be in the residual meaning of a teaching "promotion" flows from *Svihra,* which the legislature has not overruled and which we are not free to disregard.

Second, careful analysis of the language of § 9 of the act as amended in 1963 suggests a different system for promotional examinations for teachers vis-a-vis other employees. It is clear that, to the extent that teachers are covered by the act, such coverage is under the power of the superintendent of schools and board of education, rather than the personnel director. "The act throughout . . . evinces an intention to retain in the board of education the powers and responsibility for the administration of schools including the selection, placing and transfer of teachers, as well as their compensation and general management, but it at the same time aims to secure those teachers the benefit of the protective provisions of the act pertaining to tenure, removal and reinstatement and other similar matters." *Svihra* v. *Samuelson,* supra, 18. Section 9 of the act

provides, inter alia, that "[t]he personnel director shall, from time to time, as conditions warrant hold tests for the purpose of establishing employment lists for the various positions in the classified service." It also provides that "[t]he personnel director shall hold promotion tests whenever there shall be an opening in a superior class to be filled." Thus, a strict mandatory requirement is placed on the personnel director to establish employment lists for classified service positions and to hold promotion tests whenever vacancies occur.

The language of the act referring to the analogous responsibility of the superintendent and the board is less strict, however. "All tests for promotions in the teaching service shall be prepared and corrected under the direction of the superintendent of schools, with the approval of the board of education, and he shall, in like manner, determine the prerequisite qualifications for admission to such tests, *all in the spirit of this act and solely on the basis of merit.*" (Emphasis added.) Section 9. This language suggests that the act leaves to the superintendent and the board a residue of discretion, to be exercised in the spirit of the act, whether to require a test for a particular position, but it does not require them to do so. This reading also provides a basis for the meaning of "promotion" as defined in *Svihra* v. *Samuelson,* supra, which avoids the defendant's claim of circularity of reasoning. That basis is that the superintendent and the board may, in their discretion and in the spirit of the act, establish by rule or other appropriate mechanism requirements for tests for certain positions. When they have done so, the third prong of the definition of promotion articulated by the *Svihra* court will be met, namely, that "the position to which the change is made [is] one for which a competitive civil service examination is required." Id., 21.

We have considered the other arguments of the defendant. It would serve little purpose to repeat them here. Suffice it to say that the hybrid treatment of teachers under the Bridgeport civil service act creates much cloudiness. The defendant has not persuaded us that its reading of the act dispels those clouds sufficiently to overcome the reading of the act at which both the trial court and we have arrived.

There is no error.

In this opinion the other judges concurred.