STATE OF CONNECTICUT *v.* TERRELL LEDBETTER
(15480)

Borden, Norcott, Katz, Palmer and McDonald, Js.

Argued January 17—officially released April 15, 1997

*James M. Ralls*, assistant state's attorney, with whom on the brief, were *Michael Dearington*, state's attorney, and *Christopher Alexy*, assistant state's attorney, for the appellant (state).

*Dina S. Fisher*, special public defender, with whom was *Linda L. Morkan*, special public defender, for the appellee (defendant).

*Opinion*

KATZ, J. The primary issue in this certified appeal is whether the persistent felony offender statute, General Statutes § 53a-40 (d),[1] which defines a persistent felony

---

[1] General Statutes § 53a-40 (d) provides: "A persistent felony offender is a person who (1) stands convicted of a felony other than a class D felony, and (2) has been, at separate times prior to the commission of the present felony, twice convicted of a felony other than a class D felony."

offender as one who "has been, at separate times prior to the commission of the present felony, twice convicted of a felony," applies to a defendant who, prior to the commission of a third felony, entered simultaneous guilty pleas to two separate felonies. We conclude that § 53a-40 (d) requires a sequence of conviction and punishment for each prior offense and, therefore, does not apply to the present case. Accordingly, we affirm the judgment of the Appellate Court, but on the basis of a statutory analysis that differs from that of the Appellate Court.

In the first part of a two part information (part A), the defendant, Terrell Ledbetter, was charged with the crimes of robbery in the first degree in violation of General Statutes § 53a-134 (a) (3),[2] larceny in the second degree in violation of General Statutes § 53a-123 (a) (3),[3] and carrying a dangerous weapon in violation of General Statutes § 53-206 (a).[4] In the second part of

---

[2] General Statutes § 53a-134 (a) provides in relevant part: "A person is guilty of robbery in the first degree when, in the course of the commission of the crime of robbery as defined in section 53a-133 or of immediate flight therefrom, he or another participant in the crime . . . (3) uses or threatens the use of a dangerous instrument . . . ."

[3] General Statutes § 53a-123 (a) provides in relevant part: "A person is guilty of larceny in the second degree when he commits larceny as defined in section 53a-119 and . . . (3) the property, regardless of its nature or value, is taken from the person of another . . . ."

[4] General Statutes § 53-206 (a) provides: "Any person who carries upon his person any slung shot, air rifle, BB. gun, blackjack, sand bag, metal or brass knuckles, or any dirk knife, or any switch knife, or any knife having an automatic spring release device by which a blade is released from the handle, having a blade of over one and one-half inches in length, or stiletto, or any knife the edged portion of the blade of which is four inches or over in length, or any martial arts weapon or electronic defense weapon, as defined in section 53a-3, or any other dangerous or deadly weapon or instrument, unless such person has been granted a written permit issued and signed by the first selectman of a town, the mayor or chief of police of a city or the warden of a borough, authorizing such person to carry such weapon or instrument within such town, city or borough, shall be fined not more than five hundred dollars or imprisoned not more than three years or both. No permit shall be issued to any applicant who has ever been convicted

the information (part B), he was charged with being a persistent felony offender pursuant to § 53a-40 (d). See footnote 1. On November 16, 1993, after a jury trial, the defendant was found guilty of the offenses charged in part A. Thereafter, the defendant elected a court trial on part B. After the state presented evidence that on May 15, 1987, in a single court proceeding, the defendant had pleaded guilty to two felony charges, the defendant moved for a judgment of acquittal because those prior convictions had not occurred "at separate times" as required by § 53a-40 (d) (2). In a thoughtful and well reasoned memorandum of decision, the trial court, *Hartmere, J.*, granted the defendant's motion for a judgment of acquittal as to the persistent felony offender charge. The trial court concluded that the purpose of § 53a-40 (d) was to combat recidivism by enhancing the penalty for those defendants who have demonstrated a pattern of resistance to rehabilitation. The trial court reasoned that the only way to effectuate that purpose would be to require a strict sequence of offense, conviction and

of a felony. The issuing authority may request the applicant's fingerprints and full information concerning his criminal record and make an investigation concerning the suitability of the applicant to carry any such weapon. Refusal of fingerprinting by the applicant shall be sufficient cause to refuse issuance of a permit. Whenever any person is found guilty of a violation of this subsection, any weapon or other implement within the provisions hereof, found upon the body of such person, shall be forfeited to the municipality wherein such person was apprehended, notwithstanding any failure of the judgment of conviction to expressly impose such forfeiture. Any person who has been granted a permit to carry any martial arts weapon pursuant to this section may carry such weapon anywhere within the state. The provisions of this subsection shall not apply to any officer charged with the preservation of the public peace nor to any person who is found with any such weapon or implement concealed upon his person while lawfully removing his household goods or effects from one place to another, or from one residence to another, nor to any person while actually and peaceably engaged in carrying any such weapon or implement from his place of abode or business to a place or person where or by whom such weapon or implement is to be repaired, or while actually and peaceably returning to his place of abode or business with such weapon or implement after the same has been repaired."

punishment for each prior felony before the prior convictions could be considered as a basis for the enhanced penalty. With the permission of the trial court; see General Statutes § 54-96; the state subsequently appealed from that court's judgment of acquittal to the Appellate Court.[5]

The Appellate Court, in affirming the trial court's judgment, did not address the issue of sequentiality but, rather, concluded that under the plain language of § 53a-40 (d), a defendant could not be deemed a persistent felony offender unless the predicate convictions had been rendered on separate occasions. *State* v. *Ledbetter*, 41 Conn. App. 391, 406, 676 A.2d 409 (1996). We granted the state's petition for certification to appeal limited to the following question: "Does the persistent felony offender statute, General Statutes § 53a-40 (d), apply when a defendant pleads guilty to two separate charges in the same proceeding?" *State* v. *Ledbetter*, 238 Conn. 902, 677 A.2d 1377 (1996).[6] Because we interpret the language of § 53a-40 (d) and its legislative purpose to require a sequence of offense, conviction and punishment for each prior felony before a defendant may be subject to an enhanced penalty as a persistent offender, we conclude that the statute does not apply to this case.

I

Before we reach the issue of the proper interpretation of § 53a-40 (d) as applied to the present case, we must address a threshold issue that was first raised at oral argument: whether the state's appeal of the trial court's judgment should have been barred by the doctrine of double jeopardy and, if so, whether the defendant

---

[5] The defendant also appealed to the Appellate Court, challenging his conviction of the crimes charged in part A of the information.

[6] The defendant's petition for certification to appeal from the Appellate Court, addressing issues relating to his underlying conviction, was denied. *State* v. *Ledbetter*, 238 Conn. 902, 677 A.2d 1377 (1996).

waived the right to raise that bar by not raising it at the first opportunity. The double jeopardy issue was raised, sua sponte, by this court at oral argument. The parties were then asked to submit supplemental briefs addressing both the issues of double jeopardy and waiver. Following oral argument before this court, the defendant filed a separate motion to dismiss addressing the double jeopardy claim, to which the state filed a memorandum in opposition. That motion is resolved in this opinion.

Because the doctrine of double jeopardy raises questions as to the propriety of the state's appeal; see *Smalis* v. *Pennsylvania*, 476 U.S. 140, 145, 106 S. Ct. 1745, 90 L. Ed. 2d 116 (1986) ("When a successful postacquittal appeal by the prosecution would lead to proceedings that violate the Double Jeopardy Clause, the appeal itself has no proper purpose. Allowing such an appeal would frustrate the interest of the accused in having an end to the proceedings against him."); we choose to resolve the issue before we reach the merits of this case. *Galland* v. *Bronson*, 204 Conn. 330, 333, 527 A.2d 1192 (1987).

"The constitutional guarantee against double jeopardy serves three separate functions: (1) It protects against a second prosecution for the same offense after acquittal. [2] It protects against a second prosecution for the same offense after conviction. [3] And it protects against multiple punishments for the same offense [in a single trial]. *North Carolina* v. *Pearce*, 395 U.S. 711, 717, 89 S. Ct. 2072, 23 L. Ed. 2d 656 (1969). . . . *State* v. *Chicano*, 216 Conn. 699, 706, 584 A.2d 425 (1990), cert. denied, 501 U.S. 1254, 111 S. Ct. 2898, 115 L. Ed. 2d 1062 (1991)." (Internal quotation marks omitted.) *State* v. *Hill*, 237 Conn. 81, 99, 675 A.2d 866 (1996).[7]

---

[7] "There is no specific provision against double jeopardy in the constitution of Connecticut. It is nonetheless true that we have in large part adopted the common-law rule against it as necessary to the due process guaranteed

A double jeopardy claim "implicates the very power of the state to bring [a defendant] into court, and thus 'is collateral to, and separable from . . . whether . . . the accused is guilty of the offense charged.' *Abney* v. *United States*, 431 U.S. 651, 659, 97 S. Ct. 2034, 52 L. Ed. 2d 651 (1977)." *State* v. *Price*, 208 Conn. 387, 389 n.2, 544 A.2d 184 (1988). "Under the double jeopardy clause of the fifth amendment to the United States constitution, the state may not subject to retrial a defendant who has been acquitted of the crime charged. *Bullington* v. *Missouri*, 451 U.S. 430, 437–38, 101 S. Ct. 1852, 68 L. Ed. 2d 270 (1981); *State* v. *Southard*, 191 Conn. 506, 510–11, 467 A.2d 920 (1983)." *State* v. *Daniels*, 207 Conn. 374, 397, 542 A.2d 306 (1988). Necessarily related to this first prong of protection against double jeopardy is the general rule that, under most circumstances, the state may not appeal from a judgment of acquittal, even when that judgment may have been the result of a misconstruction of the law. Id., 399; see also *Arizona* v. *Rumsey*, 467 U.S. 203, 211, 104 S. Ct. 2305, 81 L. Ed. 2d 164 (1984); *Jackson* v. *Virginia*, 443 U.S. 307, 317 n.10, 99 S. Ct. 2781, 61 L. Ed. 2d 560, reh. denied, 444 U.S. 890, 100 S. Ct. 195, 62 L. Ed. 2d 126 (1979). It is this aspect of protection that is at issue here. The defendant argues that double jeopardy prevents the state from appealing the trial court's judgment of acquittal following the defendant's § 53a-40 (d) sentencing hearing.

Certain sentencing proceedings have been deemed sufficiently trial-like to implicate double jeopardy protections. See *Bullington* v. *Missouri*, supra, 451 U.S. 438–46 (capital sentencing proceeding sufficiently trial-

by article first, § 9, of our constitution. See *State* v. *Lee*, 65 Conn. 265, 271, 30 A. 1110 [1894]; *State* v. *Carabetta*, 106 Conn. 114, 117, 137 A. 394 [1927]; *State* v. *Holloway*, 144 Conn. 295, 298, 130 A.2d 562 [1957]." *Kohlfuss* v. *Warden*, 149 Conn. 692, 695, 183 A.2d 626, cert. denied, 371 U.S. 928, 83 S. Ct. 298, 9 L. Ed. 2d 235 (1962).

like to invoke double jeopardy protections). This court has not yet had occasion to decide whether the proceeding at which a convicted felon is determined to be a persistent felony offender is sufficiently trial-like as to prevent the state from appealing a judgment of acquittal on a persistent felony offender charge. The defendant argues, and the state concedes, that a § 53a-40 (d) proceeding meets the *Bullington* criteria.[8] This court is not, however, bound by these concessions. *State* v. *Putnoki*, 200 Conn. 208, 219 n.6, 510 A.2d 1329 (1986).[9] Although we note that Connecticut's persistent felony offender scheme requires a proceeding that does, indeed, have many trial-like attributes—the defendant is charged under a specific criminal statute, the defendant must stand trial or plead guilty to the charge, and the state bears the burden of producing evidence that establishes the defendant's status as a persistent felony offender beyond a reasonable doubt—we need not decide at this time whether double jeopardy is implicated by the state's appeal because we conclude that even if such a claim could have been made, the defendant has

[8] Under *Bullington* v. *Missouri*, supra, 451 U.S. 438, a sentencing proceeding is subject to double jeopardy protections if: (1) the proceeding requires a separate hearing before a jury (extended to proceedings before a judge by *Arizona* v. *Rumsey*, supra, 467 U.S. 210; (2) the fact finder is presented with alternatives and standards to guide that choice; and (3) the prosecution bears the burden of proving certain facts beyond a reasonable doubt. *Bohlen* v. *Caspari*, 979 F.2d 109, 112 (8th Cir. 1992), rev'd on other grounds, 510 U.S. 383, 114 S. Ct. 948, 127 L. Ed. 2d 236 (1994).

[9] Indeed, a review of federal authority reveals that there is a split among the circuits as to whether persistent felony offender proceedings meet the *Bullington* criteria. Compare *Carpenter* v. *Chapleau*, 72 F.3d 1269, 1274 (6th Cir.), cert. denied,    U.S.    , 117 S. Ct. 108, 136 L. Ed. 2d 61 (1996) (although persistent felony offender proceedings similar to those in *Bullington*, rule in *Bullington* did not apply because defendant's experience lacked anxiety and ordeal suffered by defendant in death penalty proceeding) with *Bohlen* v. *Caspari*, 979 F.2d 109, 113 (8th Cir. 1992) (*Bullington* applicable to any sentencing proceeding sufficiently similar to trial of guilt or innocence to implicate double jeopardy clause; issue not reached on appeal to Supreme Court), rev'd on other grounds, 510 U.S. 383, 114 S. Ct. 948, 127 L. Ed. 2d 236 (1994).

waived the right to make that claim by failing to assert it in a timely fashion.

"The most basic rights of criminal defendants are . . . subject to waiver. See, e. g., *United States* v. *Gagnon*, [470 U.S. 522, 528, 105 S. Ct. 1482, 84 L. Ed. 2d 486 (1985)] (absence of objection constitutes waiver of right to be present at all stages of criminal trial); *Levine* v. *United States*, [362 U.S. 610, 619, 80 S. Ct. 1038, 4 L. Ed. 2d 989 (1960)] (failure to object to closing of courtroom is waiver of right to public trial); *Segurola* v. *United States*, [275 U.S. 106, 111, 48 S. Ct. 77, 72 L. Ed. 186 (1927)] (failure to object constitutes waiver of fourth amendment right against unlawful search and seizure); *United States* v. *Figueroa*, 818 F.2d 1020, 1025 [1st Cir. 1987] (failure to object results in forfeiture of claim of unlawful postarrest delay); *United States* v. *Bascaro*, 742 F.2d 1335, 1365 [11th Cir. 1984] (absence of objection is waiver of double jeopardy defense), cert. denied sub nom. *Hobson* v. *United States*, [472 U.S. 1017, 105 S. Ct. 3476, 87 L. Ed. 2d 613 (1985)]; *United States* v. *Coleman*, 707 F.2d 374, 376 [9th Cir.] (failure to object constitutes waiver of fifth amendment claim), cert. denied, [464 U.S. 854, 104 S. Ct. 171, 78 L. Ed. 2d 154 (1983)]. See generally *Yakus* v. *United States*, [321 U.S. 414, 444, 64 S. Ct. 660, 88 L. Ed. 834 (1944)] ('[n]o procedural principle is more familiar to this Court than that a constitutional right may be forfeited in criminal as well as civil cases by the failure to make timely assertion of the right')." *Peretz* v. *United States*, 501 U.S. 923, 936–37, 111 S. Ct. 2661, 115 L. Ed. 2d 808 (1991).

"Whether a defendant may raise a defense of double jeopardy on appeal, when that issue was not raised [below], is a question that this court addressed, and resolved against the defendant, in *State* v. *Jones*, 166 Conn. 620, 353 A.2d 764 (1974). There . . . the defendant 'proceeded to trial, verdict and judgment without raising [a double jeopardy] claim.' Id., 630. We held that

'in so doing he impliedly waived the defense of double jeopardy, and, therefore, that issue [was] not before us for determination on the merits.' Id.

"Our resolution of the issue of waiver in *State* v. *Jones*, supra, [166 Conn. 630] is in accord with the treatment of that issue in other jurisdictions. The United States Court of Appeals for the Second Circuit has repeatedly held that '[t]he constitutional immunity from double jeopardy is a personal right which, if not affirmatively pleaded by the defendant at the [appropriate time], will be regarded as waived.' *United States* v. *Perez*, 565 F.2d 1227, 1232 (2d Cir. 1977); see also *Paul* v. *Henderson*, 698 F.2d 589, 592 (2d Cir. 1983). Other federal courts have expressed the same opinion. *United States* v. *Herzog*, 644 F.2d 713, 716 (8th Cir.), cert. denied, 451 U.S. 1018, 101 S. Ct. 3008, 69 L. Ed. 2d 390 (1981); *United States* v. *Scott*, 464 F.2d 832, 833 (D.C. Cir. 1972); *United States* v. *Buonomo*, 441 F.2d 922, 924–25 (7th Cir.), cert. denied, 404 U.S. 845, 92 S. Ct. 146, 30 L. Ed. 2d 81 (1971)." *State* v. *Price*, supra, 208 Conn. 390; see also *United States* v. *Lorenzo*, 995 F.2d 1448, 1457 (9th Cir. 1993) ("[f]ailure to present a double jeopardy challenge constitutes a waiver of that claim"); *United States* v. *Bascaro*, supra, 742 F.2d 1365 (same).

In this case, the state appealed from the trial court's judgment of acquittal as to part B of the information rendered in response to the defendant's motion. The defendant did not raise the issue of double jeopardy at any time before we raised the question at oral argument in this court. The defendant did not object on double jeopardy grounds to the state's request for permission to appeal. Furthermore, the defendant did not move to dismiss the state's appeal to the Appellate Court, did not raise the claim in opposition to the state's petition for certification to appeal to this court, nor did he raise the issue in his brief or oral argument to this court. Because this court has previously held that similar inac-

tion on a defendant's part effectively waives any double jeopardy claim; see *State* v. *Jones,* supra, 166 Conn. 630; we conclude that the defendant is barred from raising that claim here.

Having determined that this court has the authority to consider the state's appeal, we now proceed to the merits of its claim.

II

The state claims that the Appellate Court improperly concluded that the plain language of § 53a-40 (d) required the defendant's prior convictions to have occurred at separate times. Specifically, the state argues that, contrary to the conclusion of the Appellate Court, the language of the statute is not unambiguous and that a plain reading of the statute, strictly construed, would lead to bizarre and unworkable results. The state contends that we must consider the punitive purpose of the statute and conclude that the enhanced penalty it provides is triggered by the number of prior convictions only, and not by the timing of those convictions. The defendant responds that the words of the statute are clear and unambiguous, so much so that it is impossible to paraphrase the statute without returning to the statute's own words. The defendant argues that the plain meaning of those words requires that the predicate convictions must have occurred on separate occasions. In the alternative, the defendant urges this court to adopt the reasoning of the trial court and conclude that § 53a-40 (d) requires a sequence of offense, conviction and punishment for each prior felony. We agree with this alternative reading of § 53a-40 (d).

"[I]t is axiomatic that the process of statutory interpretation involves a reasoned search for the intention of the legislature. . . . In seeking to discern that intent, we look to the words of the statute itself, to the legisla-

tive history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter. . . . *Izzo* v. *Meriden-Wallingford Hospital*, 237 Conn. 259, 266, 676 A.2d 857 (1996)." (Internal quotation marks omitted.) *Stratford* v. *State Board of Mediation & Arbitration*, 239 Conn. 32, 40–41, 681 A.2d 281 (1996).

Although we agree with the state that, in some ways, an analysis of the language of the statute raises more questions than it answers, we conclude that the legislative history behind that statutory language precludes the use of two felony convictions rendered simultaneously as the basis for a conviction as a persistent felony offender. We further conclude that, in order to advance the legislative intent that § 53a-40 (d) be a solution to the problem of recidivism, its enhanced penalty appropriately applies only to those offenders who, despite having been given an opportunity to reform through a sequence of conviction and punishment for each prior offense, nevertheless continue a life of crime.

A

"As with any issue of statutory interpretation, our initial guide is the language of the statute itself. . . . *Herbert S. Newman & Partners* v. *CFC Construction Ltd. Partnership*, 236 Conn. 750, 756, 674 A.2d 1313 (1996)." (Internal quotation marks omitted.) *Federal Deposit Ins. Corp.* v. *Peabody, N.E., Inc.*, 239 Conn. 93, 102, 680 A.2d 1321 (1996). Section 53a-40 (d) provides: "A persistent felony offender is a person who (1) stands convicted of a felony other than a class D felony, and (2) has been, at separate times prior to the commission of the present felony, twice convicted of a felony other than a class D felony." The state, relying in great part on Judge Schaller's dissent to the Appellate Court's

majority opinion in this case, argues that the statutory language "at separate times . . . twice convicted" is ambiguous because the statute gives no indication as to the meaning of "separate times." The state attempts to bypass this ambiguity by arguing that the operative words of the statute are "twice convicted," and that the "at separate times" language refers not to the convictions but merely to the commission of the underlying felonies. Thus, the state urges this court to conclude that the sole effect of the statute is to exact further punishment on those felons who have committed multiple crimes, without regard to the timing of the offenses. Furthermore, the state points out that the number of prior convictions a defendant may have is often determined not by the number of crimes the defendant may have committed, but, rather, by the mechanics of plea bargaining. The state further argues that an affirmance of the Appellate Court's decision could ultimately penalize defendants by affecting prosecutors' decisions in charging those defendants.[10]

In response, the defendant argues that the Appellate Court correctly found that, in order to qualify as a persistent felony offender, the defendant must have been

---

[10] The state raises the specter of two defendants in similar circumstances receiving radically disparate treatment under the Appellate Court's interpretation of § 53a-40 (d), merely because of the time and/or place of their court dates. In addition, the state claims that a literal reading of the words "at separate times . . . twice convicted" could require *four* prior felony convictions. Although we agree with the state that, in this instance, a proper interpretation must go beyond the literal words of the statute, we disagree that a literal reading would lead to absurd results. As we make clear in this opinion, the application of § 53a-40 (d) does not hinge exclusively on a defendant's court dates, but, rather, takes into account that defendant's criminal history. As for the argument that the statute may require four prior convictions, that is simply a misreading of the statute. The phrase "at separate times" is part of the complete appositive phrase "at separate times prior to the commission of the present felony" and must be read as qualifying the phrase "has been twice convicted" into which it has been inserted. See General Statutes § 53a-40 (d).

convicted of two prior felonies at " 'two unconnected, distinct, or unique times.' " *State* v. *Ledbetter*, supra, 41 Conn. App. 406, quoting *Lett* v. *State*, 51 Md. App. 668, 679, 445 A.2d 1050 (1982). Specifically, the defendant argues that: (1) the statute's punitive purpose requires that it be strictly construed; (2) the state's interpretation, relying as it does on the number of convictions rather than the timing of those convictions, would render the phrase "at separate times" meaningless; and (3) the rule of lenity requires that any possible ambiguities be resolved in favor of the defendant.[11] We find that even though the language of § 53a-40 (d) is not as ambiguous as the state contends, certain questions are left unanswered by a strict reading of the statute.

Section 53a-40 addresses the issue of recidivism and does so in a manner that is clearly punitive. *State* v. *Dolphin*, 203 Conn. 506, 523, 525 A.2d 509 (1987). Because it is a punitive statute, the generally recognized rules of statutory construction normally would require the strictest of interpretations; 3 J. Sutherland, Statutory Construction (5th Ed. Singer 1992) § 59.03, p. 102; limiting any application of the statute to the words used. Id., § 58.02, p. 72. However, "[a]lthough we recognize the fundamental principle that [penal] statutes are to be construed strictly, it is equally fundamental that the rule of strict construction does not require an interpretation which frustrates an evident legislative intent." (Internal quotation marks omitted.) *State* v. *Burns*, 236 Conn. 18, 26–27, 670 A.2d 851 (1996).

When we look to the words of § 53a-40 (d), it is clear on its face that the phrase "twice convicted" is qualified by the phrase "at separate times," and that the state misinterprets this qualifying effect. To hold otherwise

---

[11] The state argues that it would be inappropriate to apply the rule of lenity to this case because it could lead to "difficult and possibly bizarre" results in contravention of the statute's punitive purpose. See *State* v. *Dolphin*, 203 Conn. 506, 524, 525 A.2d 509 (1987); see also footnote 12.

would render the phrase "at separate times" meaning-less, because all that would be required to trigger the statute would be two prior convictions. In a strict construction, not only are we limited to the words of the statute, but we must also take into account *all* the words of the statute. "[I]n construing statutes, we presume that there is a purpose behind every sentence, clause, or phrase used in an act and that no part of a statute is superfluous." (Internal quotation marks omitted.) *Hayes* v. *Smith*, 194 Conn. 52, 58, 480 A.2d 425 (1984). As Judge Schaller points out in his dissent to the Appellate Court's decision, however, to limit our interpretation to this construction is unsatisfying because there remains doubt as to the intent of the legislature in incorporating the phrase "at separate times." *State* v. *Ledbetter*, supra, 41 Conn. App. 408. Although we disagree with Judge Schaller's ultimate conclusion, we agree that in order to effectuate the legislature's intent, we must look beyond the plain language of § 53a-40 (d).[12]

## B

Although the defendant argues that the Appellate Court was correct in rejecting the state's appeal on the basis of the plain language of § 53a-40 (d), he proposes,

---

[12] As for the defendant's argument that the rule of lenity requires us to resolve any ambiguities in his favor, that rule comes into play only if the statute remains ambiguous after all sources of legislative intent have been explored. "[T]he touchstone of this rule of lenity is statutory ambiguity. *Bifulco* v. *United States*, 447 U.S. 381, 387, 100 S. Ct. 2247, 65 L. Ed. 2d 205 (1980). . . . [W]e . . . [reserve] lenity for those situations in which a reasonable doubt persists about a statute's intended scope even *after* resort to the language and structure, legislative history, and motivating policies of the statute. . . . *Moskal* v. *United States*, 498 U.S. 103, 108, 111 S. Ct. 461, 112 L. Ed. 2d 449 (1990)." (Citations omitted; emphasis in original; internal quotation marks omitted.) *State* v. *Hinton*, 227 Conn. 301, 317–18, 630 A.2d 593 (1993); 3 J. Sutherland, supra, § 59.03, p. 102. Because we conclude that, after full resort to the process of statutory construction, there is no reasonable doubt as to the meaning of the statute, we need not resort to the rule of lenity.

as alternative grounds for affirmance,[13] that we adopt the trial court's conclusion that the legislative purpose of the statute requires sequentiality. Specifically, the defendant argues that: (1) § 53a-40 (d) requires sequentiality of offense, conviction and punishment in order to be consistent with the rest of § 53a-40; (2) the intent of the legislature was to punish those offenders who failed to reform after their previous convictions and opportunities to rehabilitate; and (3) similar statutes in other jurisdictions require sequentiality. We agree with the defendant that the legislative purpose of § 53a-40 (d) is fulfilled only by requiring a sequence of offense, conviction and punishment, thus allowing a felon the opportunity to reform prior to being labeled a persistent felony offender.

The defendant first contends that, when placed within its statutory context, § 53a-40 (d) implicitly requires that the prior convictions upon which a finding of persistent offender status is based must have been separated by a period either of imprisonment or probation. The state responds that it is clear from the context of § 53a-40 (d) that, had the legislature so intended, the legislature could have added explicit language requiring sequentiality. In order to place the parties' arguments in the proper context, we must first review the history of the persistent offender statutes.

Section 53a-40 (d) is merely one part of a statutory scheme that defines, and provides sentencing guide-

[13] Practice Book § 4140 (a) provides: "Upon the granting of certification, the appellee may present for review alternative grounds upon which the judgment may be affirmed provided those grounds were raised and briefed in the appellate court. Any party to the appeal may also present for review adverse rulings or decisions which should be considered on the appeal in the event of a new trial, provided that such party has raised such claims in the appellate court. If such alternative grounds for affirmation or adverse rulings or decisions to be considered in the event of a new trial were not raised in the appellate court, the party seeking to raise them in the supreme court must move for special permission to do so prior to the filing of that

lines for, the habitual offender categories recognized in Connecticut.[14] There are four types of habitual offend-

party's brief. Such permission will be granted only in exceptional cases where the interests of justice so require."

[11] General Statutes § 53a-40 provides: "Persistent offenders: Definitions; defense; authorized sentences. (a) A persistent dangerous felony offender is a person who (1) stands convicted of manslaughter, arson, kidnapping, sexual assault in the first or third degree, aggravated sexual assault in the first degree, sexual assault in the third degree with a firearm, robbery in the first or second degree, or assault in the first degree, and (2) has been, prior to the commission of the present crime, convicted of and imprisoned under a sentence to a term of imprisonment of more than one year or of death, in this state or in any other state or in a federal correctional institution, for any of the following crimes: (A) The crimes enumerated in subdivision (1) of this subsection, murder, or an attempt to commit any of said crimes or murder; or (B) prior to October 1, 1975, any of the crimes enumerated in section 53a-72, 53a-75 or 53a-78 of the general statutes, revision of 1958, revised to 1975, or prior to October 1, 1971, in this state, assault with intent to kill under section 54-117, or any of the crimes enumerated in sections 53-9, 53-10, 53-11, 53-12 to 53-16, inclusive, 53-19, 53-21, 53-69, 53-78 to 53-80, inclusive, 53-82, 53-83, 53-86, 53-238 and 53-239 of the general statutes, revision of 1958, revised to 1968, or any predecessor statutes in this state, or an attempt to commit any of said crimes; or (C) in any other state, any crimes the essential elements of which are substantially the same as any of the crimes enumerated in subdivision (1) or (2) of this subsection.

"(b) A persistent serious felony offender is a person who (1) stands convicted of a felony, and (2) has been, prior to the commission of the present felony, convicted of and imprisoned under an imposed term of more than one year or of death, in this state or in any other state or in a federal correctional institution, for a crime. This subsection shall not apply where the present conviction is for a crime enumerated in subdivision (1) of subsection (a) of this section and the prior conviction was for a crime other than those enumerated in subsection (a) of this section.

"(c) A persistent larceny offender is a person who (1) stands convicted of larceny in the third degree in violation of the provisions of section 53a-124 in effect prior to October 1, 1982, or larceny in the fourth, fifth or sixth degree and (2) has been, at separate times prior to the commission of the present larceny, twice convicted of the crime of larceny.

"(d) A persistent felony offender is a person who (1) stands convicted of a felony other than a class D felony, and (2) has been, at separate times prior to the commission of the present felony, twice convicted of a felony other than a class D felony.

"(e) It shall be an affirmative defense to the charge of being a persistent offender under this section that (1) as to any prior conviction on which the state is relying the defendant was pardoned on the ground of innocence, and (2) without such conviction, the defendant was not two or more times convicted and imprisoned as required by this section.

ers covered by § 53a-40: persistent dangerous felony offender as set forth in § 53a-40 (a); persistent serious felony offender as set forth in § 53a-40 (b); persistent larceny offender as set forth in § 53a-40 (c); and persistent felony offender as set forth in. § 53a-40 (d). When first enacted as No. 828, § 40, of the 1969 Public Acts

"(f) When any person has been found to be a persistent dangerous felony offender, and the court is of the opinion that his history and character and the nature and circumstances of his criminal conduct indicate that extended incarceration and lifetime supervision will best serve the public interest, the court, in lieu of imposing the sentence of imprisonment authorized by section 53a-35 for the crime of which such person presently stands convicted, or authorized by section 53a-35a if the crime of which such person presently stands convicted was committed on or after July 1, 1981, shall sentence such person to a term of imprisonment of not more than forty years and, if such person has, at separate times prior to the commission of the present crime, been twice convicted of and imprisoned for any of the crimes enumerated in subdivision (2) of subsection (a) of this section, sentence such person to a term of imprisonment of not more than life.

"(g) When any person has been found to be a persistent serious felony offender, and the court is of the opinion that his history and character and the nature and circumstances of his criminal conduct indicate that extended incarceration will best serve the public interest, the court in lieu of imposing the sentence of imprisonment authorized by section 53a-35 for the crime of which such person presently stands convicted, or authorized by section 53a-35a if the crime of which such person presently stands convicted was committed on or after July 1, 1981, may impose the sentence of imprisonment authorized by said section for the next more serious degree of felony.

"(h) When any person has been found to be a persistent larceny offender, and the court is of the opinion that his history and character and the nature and circumstances of his criminal conduct indicate that extended incarceration will best serve the public interest, the court, in lieu of imposing the sentence authorized by section 53a-36 for the crime of which such person presently stands convicted, may impose the sentence of imprisonment for a class D felony authorized by section 53a-35, if the crime of which such person presently stands convicted was committed prior to July 1, 1981, or authorized by section 53a-35a, if the crime of which such person presently stands convicted was committed on or after July 1, 1981.

"(i) When any person has been found to be a persistent felony offender, and the court is of the opinion that his history and character and the nature and circumstances of his criminal conduct indicate that extended incarceration will best serve the public interest, the court, in lieu of imposing the sentence authorized by section 53a-35a for the crime of which such person presently stands convicted, may impose the sentence of imprisonment authorized by said section for the next more serious degree of felony; provided the sentence imposed may not be less than three years, and pro-

(P.A. 828), as part of the Connecticut Penal Code,[15] the persistent offender statute contained only three categories: persistent dangerous felony offender; persistent felony offender; and persistent larceny offender.[16] All three categories required that the defendant have had at least two prior convictions, rendered at separate times prior to the commission of the present felony. Significantly, the first two categories required that, for each of those prior convictions, the defendant had to

vided further three years of the sentence so imposed may not be suspended or reduced by the court."

[15] Public Act 828 is entitled "An Act Concerning Revision and Codification of the Substantive Criminal Law."

[16] Public Act 828 provides in relevant part: "Sec. 40. (a) A persistent dangerous felony offender is a person who (1) stands convicted of manslaughter, arson, rape, kidnapping, robbery in the first or second degree, or assault in the first degree; and (2) has been, at separate times prior to the commission of the present crime, two or more times convicted of and imprisoned, under a sentence to a term of imprisonment of more than one year or of death, in this state or in any other state or in a federal correctional institution for any of the following crimes:

"(A) The crimes enumerated in subdivision 1, the crime of murder, or an attempt to commit any of said crimes or murder; or

"(B) prior to the effective date of this act, in this state: Assault with intent to kill under section 53-117, or any of the crimes enumerated in sections 53-9, 53-10, 53-11, 53-12 to 53-16, inclusive, 53-19, 53-21, 53-69, 53-78 to 53-80, inclusive, 53-82, 53-83, 53-86, 53-238 and 53-239 of the general statutes, revision of 1958, revised to 1968, or any predecessor statutes in this state, or an attempt to commit any of said crimes; or

"(C) in any other state: Any crimes the essential elements of which are substantially the same as any of the crimes enumerated in subdivision (1) or (2).

"(b) A persistent felony offender is a person who (1) stands convicted of a felony; and (2) has been, at separate times prior to the commission of the present felony, two or more times convicted of and imprisoned under an imposed term of more than one year or of death, in this state or in any other state or in a federal correctional institution for a crime. This subsection shall not apply where the present conviction is for a crime enumerated in subdivision (1) of subsection (a) and either of the two prior convictions were for crimes other than those enumerated in subsection (a).

"(c) A persistent larceny offender is a person who, (a) stands convicted of larceny in the second degree or a lesser degree; and (b) has been, at separate times prior to the commission of the present larceny, twice convicted of the crime of larceny. . . ."

have been "sentenced and imprisoned to a term of more than one year or of death."[17] See P.A. 828, § 40. Thus, this original enactment clearly required a sequence of a "first felony, conviction, imprisonment; second felony, conviction, imprisonment; third felony" before a defendant could be labeled a persistent dangerous felony offender or a persistent felony offender. The persistent larceny offender statute did not require a term of imprisonment because the prior theft offenses would not have been punishable in state prison; see Report of the Commission to Revise the Criminal Statutes (1967) p. 65; but otherwise paralleled the first two persistent offender provisions. We therefore infer that this larceny provision also required the aforementioned sequence. "Assuredly, we are guided by the principle that the legislature is always presumed to have created a harmonious and consistent body of law . . . . Indeed, this tenet of statutory construction requiring us to read statutes together is particularly applicable when the statutes relate to the same subject matter." (Internal quotation marks omitted.) *Commission on Human Rights & Opportunities* v. *Truelove & Maclean, Inc.*, 238 Conn. 337, 347, 680 A.2d 1261 (1996).

Prior to the penal code's effective date of October 1, 1971, the persistent offender statute was amended by No. 871, § 15, of the 1971 Public Acts, so that both the persistent dangerous felony offender and the persistent felony offender provisions required only one previous conviction and term of imprisonment; the persistent larceny offender provision remained unchanged. See General Statutes (Noncum. Sup. 1971) § 53a-40 (a) through (c). Because the persistent dangerous felony

---

[17] Although the language regarding sentencing and imprisonment in P.A. 828, § 40 (a) ("imprisoned, under a sentence to a term of imprisonment") is slightly different from that in P.A. 828, § 40 (b) ("imprisoned under an imposed term"), we see no reason to distinguish, nor has an argument been made that we should, between those two phrases for the purposes of this opinion.

offender and persistent felony offender provisions then required only one previous conviction, the language as to "separate times" was necessarily deleted, and the issue of sequentiality became irrelevant. This remained the case until 1980, when the General Assembly undertook a revision of the state's sentencing laws. At that time, the statute was again amended by adding the provision for a persistent serious felony offender and by revising the elements of the persistent felony offender provision to their current form. See Public Acts 1980, No. 80-442, § 12.

There is very little in the way of legislative history for the 1980 revisions, and what little exists is primarily in the form of testimony before the judiciary committee. That testimony, however, is illuminating. "[I]n recent years we have repeatedly approved references to testimony before legislative committees in order to shed light on legislative intent. See, e.g., *Nationwide Ins. Co.* v. *Gode*, 187 Conn. 386, 392 n.6, 395–96, 446 A.2d 1059 (1982); *Tax Commissioner* v. *Estate of Bissell*, 173 Conn. 232, 245, 377 A.2d 305 (1977); *Gentile* v. *Altermatt*, 169 Conn. 267, 290–91, 363 A.2d 1 (1975), appeal dismissed, 423 U.S. 1041, 96 S. Ct. 763, 46 L. Ed. 2d 631 (1976); see also *Board of Education* v. *Bridgeport Education Assn.*, 9 Conn. App. 199, 204 n.3, 518 A.2d 394 (1986), cert. denied, 202 Conn. 802, 519 A.2d 1206 (1987). This is fully consistent with the general principle of statutory construction that we look, in part, to the problem or issue that the legislature sought to resolve, and the purpose it sought to serve, in enacting a statute. *Verrastro* v. *Sivertsen*, 188 Conn. 213, 221, 448 A.2d 1344 (1982). Often that problem, issue or purpose is disclosed by reference to the testimony before a legislative committee." *State* v. *Magnano*, 204 Conn. 259, 273–74 n.8, 528 A.2d 760 (1987).

The testimony before the committee and the comments of the committee members themselves indicate

that the legislative purpose of § 53a-40 (d) was to deal with the problem of the repeat felony offender who had not been reformed or rehabilitated by his or her prior convictions. Donald Browne, state's attorney for the judicial district of Fairfield, testified that the purpose of the new persistent felony offender provision was to punish the "chronic crook." Conn. Joint Standing Committee Hearings, Judiciary, Pt. 5, 1980 Sess., p. 1143. In his testimony, Browne stated: "[I]f an individual is before the court [a] third time convicted of a felony, it is time that the court consider no longer his rehabilitation. He is there a three time loser . . . let's not put him back out on probation, he's been there twice before. This is his third fall . . . ." Id., p. 1144.

The state argues that this testimony supports its position that § 53a-40 (d) was designed to punish more severely those who commit multiple crimes, regardless of the timing of the prior convictions. We disagree. Browne's testimony makes sense only if the legislation is viewed as a response to a defendant's repeated failure to reform after a sequence of convictions. If there were no requirement of sequentiality, the defendant would have had no opportunity to *avoid* three time loser status. This implicit understanding that there be a requirement of sequentiality is further supported by Representative Alfred J. Onorato's question to a witness during the judiciary committee hearings: "You don't believe that a person who's been twice convicted of a felony and he's been placed on probation after probation should do any time?" Id., p. 1148.[18] We are con-

---

[18] Moreover, our interpretation that sequentiality is required is further supported by the legislature's use of the term "persistent" in creating this category of felony offender. "In the construction of the statutes, words . . . shall be construed according to the commonly approved usage of the language . . . ." General Statutes § 1-1 (a). The commonly approved meaning of persistent, according to Webster's Third New International Dictionary, is to "continu[e] in a course of action without regard to opposition or *previous failure* . . . [or to] continu[e] to exist *in spite of interference or treatment* . . . ." (Emphasis added.)

vinced that the most reliable conclusion that can be drawn from this legislative history is that § 53a-40 (d) was designed to attack recidivism. Furthermore, we conclude that because § 53a-40 (d) is a recidivism statute, a sequence of "first felony; conviction; punishment; second felony; conviction; punishment" must precede the commission of the third felony before the enhanced penalty may be applied.

Other jurisdictions that have interpreted legislation similar to § 53a-40 (d) have concluded that those statutes required sequentiality. See *Hall* v. *State*, 473 A.2d 352, 356–57 (Del. 1984) (law only applies when second conviction takes place after sentencing has been imposed for first offense); *State* v. *Metoyer*, 612 So. 2d 755, 759 (La. App. 1992) (multiple convictions based on guilty pleas entered on same day constitute single conviction for purpose of habitual offender sentencing); *Lett* v. *State*, supra, 51 Md. App. 679 (convictions must occur at "unconnected, distinct, or unique times"); see also annot., 7 A.L.R.5th 289 (1992) ("The prevalent view is that enhanced punishment cannot be imposed unless all of the defendant's prior convictions preceded commission of the principal offense, and each prior offense and conviction occurred in chronological sequence. Thus, each offense, following the first, must have been committed after the defendant's conviction of the immediately preceding offense.").

After analyzing both the language and the history of § 53a-40 (d), we conclude that the words of this statute, together with its legislative history, make clear that the legislature intended this section to apply only to those repeat offenders who, despite having been given the opportunity to reform, not once but twice, nevertheless persist in a career of crime. In order to ensure that the statute apply only to this targeted group of recidivists, it must be read to require a strict sequence of "offense,

conviction, punishment" for each prior felony conviction.

The judgment of the Appellate Court is affirmed.

In this opinion BORDEN, NORCOTT and PALMER, Js., concurred.

MCDONALD, J., concurring. I believe that the state's appeal of the judgment of acquittal in favor of the defendant is barred by the double jeopardy clause of the fifth amendment to the United States constitution. The majority concludes that the defendant waived his right not to be placed in double jeopardy by failing to raise this defense at an earlier stage of the proceedings. This presents a difficult issue on which we have found no cases directly on point. I respectfully disagree with the majority in this conclusion.

Here, this court itself raised the issue of double jeopardy at oral argument and requested that the parties file supplemental briefs on the issue. The defendant then filed a motion to dismiss the state's appeal. Implicit in the majority's opinion is the proposition that the defendant should have realized he had a double jeopardy defense and, therefore, his failure to raise the defense earlier constituted a waiver of that right. I do not believe that such inaction, perhaps based upon inadvertence or inattention, would constitute a valid waiver of such an important right at this stage of the proceedings. " 'Waiver' is a vague term used for a great variety of purposes, good and bad, in the law. In any normal sense, however, it connotes some kind of voluntary knowing relinquishment of a right." *Green* v. *United States*, 355 U.S. 184, 191, 78 S. Ct. 221, 2 L. Ed. 2d 199 (1957), citing *Johnson* v. *Zerbst*, 304 U.S. 458, 58 S. Ct. 1019, 82 L. Ed. 1461 (1938).

There is a statement in *State* v. *Price*, 208 Conn. 387, 390–91, 544 A.2d 184 (1988), that the United States

Supreme Court implied in *United States* v. *Dinitz*, 424 U.S. 600, 609–10 n.11, 96 S. Ct. 1075, 47 L. Ed. 2d 267 (1976), that a waiver of a double jeopardy defense does not require the knowing, intelligent and voluntary standard of *Johnson* v. *Zerbst*, supra, 304 U.S. 458. That implication, however, is restricted in *Dinitz* to the case where there may be a second trial of a defendant following the granting of a motion for a mistrial or the reversal of a conviction on appeal. *United States* v. *Dinitz*, supra, 609–10 n.11. Those circumstances do not apply in this case.[1]

What is clear is that, in this case, as soon as the defendant was questioned about his right under the double jeopardy clause, he sought to exercise it. I cannot find a waiver by the defendant under these circumstances. This is particularly so because we have not previously decided whether a retrial of a defendant under the persistent felony offender statute; General Statutes § 53a-40 (d); would be barred by the defendant's previous acquittal.

In *State* v. *Jones*, 166 Conn. 620, 630, 353 A.2d 764 (1974), this court concluded that the defendant had waived the defense of double jeopardy by not raising it at his second trial on the same charges. "Instead [the defendant] proceeded to trial, verdict and judgment without raising such a claim." Id. This case does not help us resolve the defendant's motion to dismiss. Here, the defendant cannot yet have waived a defense that he is entitled to raise at the start of a second trial, which is when he would actually undergo double jeopardy. "The protections afforded by the [c]lause are implicated

---

[1] The implied waiver found from a failure to raise the issue "at the first opportunity" in *Levin* v. *United States*, 5 F.2d 598, 600–601 (9th Cir. 1925), applied to a failure to raise the issue of a duplicitous indictment at the trial before a verdict was returned. It could not thereafter be raised for the first time in a motion for arrest of judgment. These circumstances, as well, do not exist here.

only when the accused has actually been placed in jeopardy. . . . This state of jeopardy attaches when a jury is empaneled and sworn or, in a bench trial, when the judge begins to receive evidence." (Citation omitted.) *United States* v. *Martin Linen Supply Co.*, 430 U.S. 564, 569, 97 S. Ct. 1349, 51 L. Ed. 2d 642 (1977).

As the United States Supreme Court explained: "When a successful postacquittal appeal by the prosecution *would lead to proceedings that violate the Double Jeopardy Clause*, the appeal itself has no proper purpose. Allowing such an appeal would frustrate the interest of the accused in having an end to the proceedings against him." (Emphasis added.) *Smalis* v. *Pennsylvania*, 476 U.S. 140, 145, 106 S. Ct. 1745, 90 L. Ed. 2d 116 (1986); *State* v. *Daniels*, 207 Conn. 374, 398, 542 A.2d 306 (1988).

We should decide whether the double jeopardy clause bars a retrial of the defendant pursuant to § 54a-40 (d), and if it does, then this court should dismiss the state's appeal. The state agrees that a proceeding under § 53a-40 (d) has several characteristics comparable to criminal trials on the question of guilt or innocence such that it would be subject to the double jeopardy clause. See *Arizona* v. *Rumsey*, 467 U.S. 203, 211–12, 104 S. Ct. 2305, 81 L. Ed. 2d 164 (1984); *Bullington* v. *Missouri*, 451 U.S. 430, 438, 101 S. Ct. 1852, 68 L. Ed. 2d 270 (1981). A persistent felony offender charge must be adjudicated in a proceeding separate from that involving the principal crime charged. The state has the burden of proving the elements of a persistent felony offender charge beyond a reasonable doubt. *State* v. *Sinclair*, 184 Conn. 215, 216–17, 439 A.2d 945 (1981). Where the jury is not given unfettered discretion to choose an appropriate punishment, but instead, must decide between two alternatives, it has been held that the proceeding is subject to the double jeopardy clause. *Bullington* v. *Missouri*, supra, 438; *State* v. *Daniels*,

supra, 207 Conn. 398–99 (double jeopardy principles apply to General Statutes § 53a-46a).

The state argues, however, that the trial court's disposition of the persistent felony offender charge was not an "acquittal" because on remand the trial court could render judgment on the facts that it had previously found. Decisions of the United States Supreme Court demonstrate otherwise: "[W]hen a defendant has been acquitted at trial he may not be retried on the same offense, even if the legal rulings underlying the acquittal were erroneous." *Sanabria* v. *United States*, 437 U.S. 54, 64, 98 S. Ct. 2170, 57 L. Ed. 2d 43 (1978); *United States* v. *Martin Linen Supply Co.*, supra, 430 U.S. 571; *Fong Foo* v. *United States*, 369 U.S. 141, 143, 82 S. Ct. 671, 7 L. Ed. 2d 629 (1962); *State* v. *Paolella*, 210 Conn. 110, 130, 554 A.2d 702 (1989). In *Arizona* v. *Rumsey*, supra, 467 U.S. 211, the court stated: "In making its findings, the trial court relied on a misconstruction of the statute . . . . Reliance on an error of law, however, does not change the double jeopardy effects of a judgment that amounts to an acquittal on the merits. . . . Thus, this [c]ourt's cases hold that an acquittal on the merits bars retrial even if based on legal error." (Citation omitted.) I therefore disagree with the state that the defendant has not been acquitted of § 53a-40 (d).

Although I concur in the result, I conclude that the state's appeal would have no proper purpose and should be dismissed.